# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

**THINK COMPUTER CORP.**
**Patent Owner/Appellant**
**v.**

**SQUARE, INC.**
**Petitioner/Appellee**
**Proceeding No: CBM2014-00159**

## CORRECTED NOTICE FORWARDING CERTIFIED LIST

A Notice of Appeal to the United States Court of Appeals for the Federal Circuit, was timely filed on April 7, 2016, in the United States Patent and Trademark Office in connection with the above identified *Covered Business Method Review* (CBM) proceeding. Pursuant to 35 U.S.C. § 143 a Certified List is this day being forwarded to the Federal Circuit.

Respectfully submitted,

By: *Tawana A. Hawkins*
Tawana A. Hawkins
Paralegal
Mail Stop 8
P.O. Box 1450
Alexandria, VA 22313-1450
571-272-9035

Under Secretary of Commerce for Intellectual Property and
Director of the United States
Patent and Trademark Office

Date: May 31, 2016

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing

has been served on Appellant and Appellee this 31st. day of May 2016, as follows:

FOR PETITIONER:

Michael T. Rosato
Robin L. Brewer
WILSON SONSINI GOODRICH & ROSATI, P.C.
mrosato@wsgr.com
rbrewer@wsgr.com

FOR PATENT OWNER:

Isaac Rabicoff
Rabicoff Law LLC
73 W. Monroe Street
Chicago, IL  60603

By: *Tawana A. Hawkins*
Tawana A. Hawkins
Paralegal
Mail Stop 8
P.O. Box 1450
Alexandria, VA 22313-1450
571-272-9035

## U.S. DEPARTMENT OF COMMERCE
### United States Patent and Trademark Office

May 31, 2016

**THIS IS TO CERTIFY** that the attached document is a list of the papers that comprise the record before the Patent Trial and Appeal Board (PTAB) for the *Covered Business Method Review* proceeding identified below:

### THINK COMPUTER CORP
**Patent Owner**
v.

### SQUARE, INC.
**Petitioner**
v.

### Case: CBM2014-00159
**Patent 8,396,808**

By authority of the

### DIRECTOR OF THE UNITED STATES
### PATENT AND TRADEMARK OFFICE

*Certifying Officer*



## PROSECUTION HISTORY FOR CBM14-00159
## THINK COMPUTER CORP. v. SQUARE, INC.

| DATE | DOCUMENT |
|---|---|
| 07/21/2014 | Petitioner's Power of Attorney |
| 07/21/2014 | Complaint for Patent Infringement |
| 07/21/2014 | Petition for Covered Business Method Patent Review |
| 07/30/2014 | Notice of Filing Date Accorded to Petition and Time for Filing Patent Owner Preliminary Response |
| 08/14/2014 | Patent Owner's Mandatory Notices |
| 08/14/2014 | Patent Owner's Power of Attorney |
| 10/20/2014 | Patent Owner's Preliminary Response |
| 11/20/2014 | Order – Conduct of the Proceeding |
| 12/29/2014 | Decision – Institution of Covered Business Method Patent Review |
| 12/29/2014 | Scheduling Order |
| 01/27/2015 | Patent Owner's Motion for *Pro Hac Vice* Admission of Michael J. Aschenbrener |
| 03/04/2015 | Patent Owner's Power of Attorney and Designation of Counsel |
| 03/04/2015 | Motion to Withdraw as Counsel |
| 03/12/2015 | Order – Conduct of the Proceeding |
| 03/12/2015 | Decision – Patent Owner's Motion for *Pro Hac Vice* Recognition of Counsel |
| 03/13/2015 | Patent Owner's Power of Attorney and Designation of Counsel |
| 03/13/2015 | Joint Stipulation to Extend Due Dates 1 & 2 |
| 03/23/2015 | Patent Owner's Notice of Cross-Examination of Norman M. Sadeh-Koniecpol, Ph.D. |
| 04/06/2015 | Second Joint Stipulation to Extend Due Dates 1 Through 4 |
| 05/08/2015 | Patent Owner's Motion to Amend |
| 05/08/2015 | Patent Owner's Response |
| 06/24/2015 | Order – Conduct of Proceeding |
| 06/25/2015 | Petitioner's Notice of Deposition of Aaron Greenspan |
| 07/07/2015 | Order – Conduct of Proceeding |
| 07/08/2015 | ERRATA |
| 07/14/2015 | Petitioner's Motion for Sanctions Against Patent Owner |
| 07/15/20105 | Third Joint Stipulation to Extend Due Dates 2 and 3 |
| 07/23/2015 | Patent Owner's Opposition to Petitioner's Motion for Sanctions |
| 08/03/2015 | Petitioner's Opposition to Patent Owner's Motion to Amend |

## PROSECUTION HISTORY FOR CBM14-00159
## THINK COMPUTER CORP. v. SQUARE, INC.

| | |
|---|---|
| 08/03/2015 | Petitioner's Reply to Patent Owner's Response |
| 08/03/2015 | Petitioner's Reply in Support of its Motion for Sanctions Against Patent Owner |
| 08/11/2015 | Patent Owner's Reply in Support of Motion to Amend |
| 08/12/2015 | Expunged |
| 08/14/2015 | Order – Conduct of Proceeding |
| 08/15/2015 | Motion to Withdraw as Counsel |
| 08/18/2015 | Petitioner's Notice of Objection to Evidence |
| 08/18/2015 | Petitioner's Motion to Exclude Evidence |
| 08/18/2015 | Petitioner's Request for Oral Argument |
| 08/18/2015 | Patent Owner's Request for Oral Argument |
| 08/25/2015 | Patent Owner's Opposition to Petitioner's Motion to Exclude Evidence |
| 08/31/2015 | Order – Trial Hearing |
| 08/31/2015 | Order – Motion to Withdraw as Counsel |
| 09/01/2015 | Petitioner's Reply to Patent Owner's Opposition to Motion to Exclude Evidence |
| 09/04/2015 | Petitioner's Updated Exhibit List |
| 11/05/2015 | Oral Hearing Held on Thursday, September 10, 2015 |
| 11/27/2015 | Final Written Decision` |
| 11/27/2015 | Order – Decision on Motion for Sanctions |
| 12/21/2015 | Patent Owner's Power of Attorney |
| 12/28/2015 | Patent Owner's Motion for Rehearing |
| 02/09/2016 | Decision – Motion for Rehearing |

Trials@uspto.gov                                    Paper No. 47
571-272-7822                              Entered: November 27, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE PATENT TRIAL AND APPEAL BOARD

SQUARE, INC.,
Petitioner,

v.

THINK COMPUTER CORPORATION,
Patent Owner.

Case CBM2014-00159
Patent No. 8,396,808 B2

Before TONI R. SCHEINER, MICHAEL W. KIM, and
BART A. GERSTENBLITH, *Administrative Patent Judges.*

KIM, *Administrative Patent Judge.*

FINAL WRITTEN DECISION
*35 U.S.C. § 328(a) and 37 C.F.R. § 42.73*

## I.    INTRODUCTION

Square, Inc. ("Petitioner") filed a Petition (Paper 3, "Pet.") requesting
institution of a covered business method patent review of claims 1–11, 13–
17, and 19–22 of U.S. Patent No. 8,396,808 B2 ("the '808 patent").  Think

CBM2014-00159
Patent 8,396,808 B2

Computer Corporation ("Patent Owner") filed a Preliminary Response
(Paper 7, "Prelim. Resp."). On December 29, 2014, we instituted a covered
business method patent review of claims 1–8, 10, 11, 13–17, and 20–22 on
certain grounds of unpatentability alleged in the Petition. Paper 9 ("Dec.").
After institution of trial, Patent Owner filed a Patent Owner Response
(Paper 21, "PO Resp.") and Petitioner filed a Reply (Paper 30, "Reply").
Patent Owner also filed a Motion to Amend (Paper 20, "PO Motion"), to
which Petitioner filed an Opposition (Paper 29, "Pet. Opp."), and Patent
Owner filed a Reply (Paper 32, "PO Reply"). Petitioner further filed a
Motion to Exclude (Paper 37, "Mot. Exc."), to which Patent Owner filed an
Opposition (Paper 40, "PO Opp."), and Petitioner filed a Reply (Paper 43,
"Pet. Reply"). An oral hearing was held on September 10, 2015. Paper 46
("Tr.").

The Board has jurisdiction under 35 U.S.C. § 6(c). In this Final
Written Decision, issued pursuant to 35 U.S.C. § 328(a) and 37 C.F.R.
§ 42.73, we determine that Petitioner has shown by a preponderance of the
evidence that all claims for which trial was instituted, claims 1–7, 9–11, 13–
17, and 20–22, are *unpatentable*. Furthermore, Patent Owner's Motion to
Amend is *denied*. Additionally, Petitioner's Motion to Exclude is *denied*.

II.    DISCUSSION

    *A.    The '808 Patent*

The '808 patent is directed to an electronic payment system in which a
participant may act as either purchaser or merchant depending on whether
the participant's account is assigned either the purchaser or merchant role.
Ex. 1001, 3:17–20.

2

CBM2014-00159
Patent 8,396,808 B2

Claim 1 is illustrative of the challenged subject matter and is reproduced below.

> 1. A method for transferring an electronic payment between a purchaser and a merchant comprising:
>
> assigning a role of a merchant account to a first account and a role of a purchaser account to a second account within a payment system wherein the first account and the second account are adapted to selectively function as either a merchant account or a purchaser account during any particular transaction;
>
> adding an item offered for sale by the merchant from a product catalog stored in the payment system to a purchase list;
>
> obtaining a user ID token of the purchaser from a merchant terminal, the merchant terminal being at a merchant location and the merchant location being different from the payment system;
>
> communicating identity confirmation information associated with the user ID token to the merchant terminal; and
>
> transferring funds for a purchase price total from the purchaser account to the merchant account.

### B.   *Instituted Grounds of Unpatentability*

The Board instituted trial for claims 1–11, 13–17, and 19–22 on the following grounds of unpatentability, all of which are on the basis of obviousness under 35 U.S.C. § 103(a):

| References | Claim(s) Challenged |
|---|---|
| Bemmel[1] and Dalzell[2] | 1–3, 5–7, 17, and 20–22 |

---

[1] U.S. Pat. App. Pub. No. 2008/0046366 A1, pub. Feb. 21, 2008 (Ex. 1005).
[2] U.S. Pat. App. Pub. No. 2003/0204447 A1, pub. Oct. 30, 2003 (Ex. 1006).

3

CBM2014-00159
Patent 8,396,808 B2

| References | Claim(s) Challenged |
|---|---|
| Bemmel, Dalzell, and Carlson[3] | 4 |
| Bemmel, Dalzell, and Tripp[4] | 9, 10, and 13–15 |
| Bemmel, Dalzell, and Elston[5] | 11 |
| Bemmel, Dalzell, and Deschryver[6] | 16 |

Petitioner also relies upon Declarations of Norman M. Sadeh-Koniecpol, Ph.D. in support of its challenges. Exs. 1002, 1021.

C.    *Standing*

We determined, in the Decision on Institution, that the '808 patent is a covered business method patent, as defined in § 18(a)(1)(E) of the America Invents Act and 37 C.F.R. § 42.301, because at least one claim of the '808 patent is directed to a covered business method. Dec. 5–9. Patent Owner does not dispute our previous analysis in its Patent Owner Response. Thus, after considering the record again, we reaffirm our determination in the Decision on Institution and conclude that the '808 patent is eligible for a covered business method patent review.

D.    *Claim Construction*

In a covered business method patent review, claim terms in an unexpired patent are interpreted according to their broadest reasonable

---

[3] U.S. Pat. App. Pub. No. 2007/0185785 A1, pub. Aug. 9, 2007 (Ex. 1008).
[4] U.S. Pat. App. Pub. No. 2006/0143087 A1, pub. June 29, 2006 (Ex. 1009).
[5] U.S. Pat. App. Pub. No. 2002/0143655 A1, pub. Oct. 3, 2002 (Ex. 1013).
[6] PCT Pub. No. WO 2007/008686 A2, pub. Jan. 18, 2007 (Ex. 1010).

4

CBM2014-00159
Patent 8,396,808 B2

construction in light of the Specification of the patent in which they appear. 37 C.F.R. § 42.300(b); *see also In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1278–80 (Fed. Cir. 2015) ("Congress implicitly approved the broadest reasonable interpretation standard in enacting the AIA," and "the standard was properly adopted by PTO regulation."); *accord Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1328 (Fed. Cir. 2015) ("though the rules governing IPR matters at issue in *Cuozzo* will not necessarily govern all PGR/CBM matters, we see no basis for distinguishing between the two proceedings for purposes of the PTAB's use of BRI in claim construction here"). Under the broadest reasonable construction standard, claim terms are given their ordinary and customary meaning, as would be understood by one of ordinary skill in the art in the context of the entire disclosure. *In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007). Any special definition for a claim term must be set forth in the specification with reasonable clarity, deliberateness, and precision. *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994). We must be careful not to read a particular embodiment appearing in the written description into the claim if the claim language is broader than the embodiment. *In re Van Geuns*, 988 F.2d 1181, 1184 (Fed. Cir. 1993). We construe the terms below in accordance with these principles.

> 1.    *Whether a Proper Construction of "Purchase List," "Product Catalog," or "Transaction Record" Requires "Line Item Data"*

Petitioner proposes constructions for several claim terms, including "transaction record." Pet. 12–18. Patent Owner asserts that Petitioner's constructions of "purchase list," "product catalog," and "transaction record," or their application to the prior art, are unreasonably broad for omitting the

CBM2014-00159
Patent 8,396,808 B2

material limitation of "line item data." PO Resp. 4–9, 13 (citing Exs. 1001,

2005, 2021, 2022, 2023).[7] After considering both Petitioner and Patent

Owner's positions, as well as all supporting evidence, we are unpersuaded

that a proper construction of "purchase list," "product catalog," or

"transaction record" requires "line item data."

Patent Owner asserts the following:

> But a POSITA certainly would have understood that a
> purchase list, product catalog, and transaction record
> necessarily would include line item data because the term "line
> item data" had been in use in the field for years, if not decades.

PO Resp. 6. Patent Owner then goes on to cite several Exhibits showing that

the term "line item data" was known for years prior to July 2009.

PO Resp. 6–7 (citing Exs. 2021, 2022, 2023, QuickBooks, Duncan). Patent

Owner's assertions are misplaced. We are persuaded, and thus find, that the

term "line item data" was known prior to July 2009. We are unclear,

however, as to the connection between this finding and Patent Owner's

position that the claim terms "purchase list," "product catalog," and

"transaction record" require "line item data." To use an analogy, Patent

Owner is asserting that a claim term "fruit" requires "apples" because

"apples" were known. Certainly no one would dispute that "apples" are

known, and that "apples" are a "fruit." The fact that apples are known,

---

[7] Patent Owner also cites to excerpts from the following two books:
*QuickBooks 2006: The Official Guide for Premier Edition Users*, published
by McGraw-Hill/Osborne, ISBN 978-0-07226-274-2 ("QuickBooks"); *The
Career Programmer: Guerilla Tactics for an Imperfect World* by
Christopher Duncan, ISBN 978-1-59059-624-1 ("Duncan"). These books,
however, do not appear to have been submitted as exhibits in this
proceeding. Accordingly, we have not considered them.

CBM2014-00159
Patent 8,396,808 B2

however, does not prevent other fruits, such as oranges or pears, from also meeting the claim term "fruit." Similarly, while we agree that the claim terms "purchase list," "product catalog," and "transaction record" encompass "line item data," we are unpersuaded that information other than "line item data" cannot also meet "purchase list," "product catalog," and "transaction record."

Patent Owner asserts further that its position is supported by the Specification, which discloses that "purchase list," "product catalog," and "transaction record" include "line item data." PO Resp. 7–9 (citing Exs. 1001, 2005). We are persuaded, and thus find, that the Specification, discloses that "purchase list," "product catalog," and "transaction record" *may* include "line item data." We are unpersuaded, however, that a proper construction of "purchase list," "product catalog," and "transaction record" *requires* "line item data." Part of our analysis is similar to that set forth above with respect to the Exhibits, and thus, need not be repeated here. Among other reasons informing our analysis, the Specification does not set forth any explicit definitions for "purchase list," "product catalog," or "transaction record" that require "line item data," for example, in a glossary or in any other manner that could be considered reasonably clear, deliberate, and precise. *See In re Paulsen*, 30 F.3d at 1480. At best, the Specification discloses that, in certain embodiments, "purchase list," "product catalog," and "transaction record" *may* include "line item data," but the Specification does not indicate that those embodiments are limiting. *See In re Van Geuns*, 988 F.2d at 1184.

Patent Owner further asserts that the term "line item data" may itself include certain additional information, citing the prosecution history of the

7

CBM2014-00159
Patent 8,396,808 B2

'808 patent. PO Resp. 9 (citing Ex. 2005). Patent Owner's assertion is not persuasive, as we have determined that the proper constructions of the claim terms "purchase list," "product catalog," and "transaction record" do not require "line item data."

      2.    *"Line Item Data" and "Line Item Transaction Data"*

In its Patent Owner Response and Motion to Amend, Patent Owner sets forth several constructions for "line item data" and "line item transaction data." PO Resp. 9; Motion 10.[8] As an initial matter, we are unclear as to the exact delineation between the two terms, as the two terms are often used interchangeably by Patent Owner. *See, e.g.*, PO Resp. 9 ("the limitation 'line item data' or 'line item transaction data' 'necessarily forms part of elements recited in the claims'"); Ex. 1001, 8:6–13 ("[A]s one of the main benefits of having merchant product catalogs integrated into the payment system, *line item transaction data* can be communicated. The *line item data* is additionally stored as part of the transaction record of the accounts . . . ." (emphasis added)). The two terms are different, however, in that one recites "transaction" while one does not. As every word in a claim limitation is usually presumed to have meaning, we construe "line item transaction data" as a "line item data" related to a transaction, although as a practical matter, we see little substantive difference between the two terms. Nevertheless, with that clarification of "line item transaction data," we need only focus our analysis on "line item data."

---

[8] Although none of the claims currently recites or requires "line item data" or "line item transaction data," we determine that a formal construction of those terms at this juncture would best assist us in properly evaluating both the instituted grounds of unpatentability and the Motion to Amend.

CBM2014-00159
Patent 8,396,808 B2

Patent Owner sets forth two separate constructions for "line item data." In the Patent Owner Response, Patent Owner asserts that "line item data" is "itemized data pertaining to products and services that is derived from the 'product catalog' and stored in the 'purchase list' and 'transaction record.'" PO Resp. 9. For support, Patent Owner cites the same Exhibits set forth above in our analysis of "purchase list," "product catalog," and "transaction record." In the Motion to Amend, Patent Owner asserts that "line item data" is "the information given on each line of an invoice used to communicate the quantity, description, type, cost, product identifier (e.g., stock keeping unit), tax, duty, shipping, or any other fees that arrive at the total sum for the transaction." Motion 10 (citing Ex. 2021); *see also* PO Reply 4 ("line item transaction data 'may include quantity, description, type, cost, product identifier (e.g., stock keeping unit), tax, duty, shipping or other fees'"). Petitioner asserts that Patent Owner's proposed constructions are inconsistent and overly narrow, and asserts that a proper construction of "line item data" is "one or more attributes used in relation to individual products involved in a purchase or sale." Pet. Opp. 4–9 (citing Exs. 1001, 1020, 2005, 2021).

As an initial matter, we note that Patent Owner's proposed construction set forth in its Motion to Amend is not a claim construction, but a list of items that may be included under a proper construction of "line item data." As an analogy, we would not say a definition of "fruit" is "apples, oranges, and pears." Certainly, all those items are fruit, but a proper definition of "fruit" would express the boundaries from which one of ordinary skill could determine that apples, oranges, and pears are indeed fruit. For example, Random House provides such a definition of "fruit" as

9

CBM2014-00159
Patent 8,396,808 B2

"any product of plant growth useful to humans or animals." *Dictionary.com Unabridged*, Random House, Inc.,

http://dictionary.reference.com/browse/fruit (accessed: Nov. 24, 2015).

To that end, the Patent Owner Response does set forth what could be more properly considered a claim construction. PO Resp. 9. And indeed, when considered in conjunction with Petitioner's proposed construction, the two constructions are similar. As noted by both Patent Owner and Petitioner, the Specification only mentions "line item data," or similar wording, as follows:

> Additionally, as one of the main benefits of having merchant product catalogs integrated into the payment system, *line item transaction data* can be communicated. The *line item data* is additionally stored as part of the transaction record of the accounts. This itemized information can be very useful, such as in one application where tax forms are automatically completed by aggregating each category of *line item transaction data* as appropriate.

Ex. 1001, 8:6–13. From the aforementioned portion of the Specification, we determine that the key to a proper construction of "line item data" is that it is information that is *itemized* and capable of *categorization*. In other words, "line item data" is an itemized part of a larger whole, more specifically, but not limited to, product catalogs, purchase lists, and transactions records, i.e., at a most granular level, individual products involved in a purchase or sale, as advocated by Petitioner. This focus on itemization and categorization of products is supported by other portions of the Specification cited by the parties, for example, column 2, lines 15–17, which recites that "[t]he integration of the payment system and *product* catalog functions to enable recording and tracking transactions with *itemized* detail" (emphases added). *See also* Ex. 1001, 5:51–55 ("the method may additionally store purchase

10

CBM2014-00159
Patent 8,396,808 B2

list information as a transaction record for the merchant account and/or the purchaser account, which functions to form an *itemized* purchase history" (emphasis added)); 4:4–6 ("[t]he *product* catalog preferably includes a listing of *product* descriptions and prices for each *product* contained within the *product* catalog" (emphases added)); 4:6–13 ("[a]dditional information may be included for a *product* such as *categories* for tax purposes and other purposes, *product*-related IDs for each distributor of the *product* (e.g., Stock-Keeping Unit or 'SKU'), images or media files related to the *product*, inventory related information (the number of *items* on hand, on order, etc. at each warehouse location), or any other suitable product-related data" (emphases added)); 4:13–16 ("[t]he *product* catalog may be a database accessed by outside applications, but may additionally or alternatively include a hosted web-based store through which *products* can be added to a shopping cart (i.e., a purchase list)" (emphases added)).

Accordingly, we construe "line item data" as "itemized information from a larger group of information, related to individual products involved in a purchase or sale, that is capable of categorization," where non-limiting examples of "line item data" may include one or more of "quantity, description, type, cost, product identifier (e.g., stock keeping unit), tax, duty, shipping or other fees."

> 3. *"Wherein the First Account and the Second Account Are Adapted to Selectively Function as Either a Merchant or a Purchaser Account During Any Particular Transaction"*

Patent Owner asserts that Dalzell does not disclose or render obvious "bidirectional accounts." PO Reply 4–5. There is no term "bidirectional accounts" set forth in the claims, but both parties use this term in their arguments. *See, e.g.*, PO Reply 4–5; Pet. 2–3. We presume that the parties

11

CBM2014-00159
Patent 8,396,808 B2

are referring to the following limitation of independent claim 1: "wherein the first account and the second account are adapted to selectively function as either a merchant or a purchaser account during any particular transaction." Independent claims 20, 21, and 22 each recite a similar claim limitation. The only mention of "bi-directional" in the Specification is as follows, and is consistent with the aforementioned presumption: "In other words, within the scope of all transactions, accounts of the payment system can function as bi-directional transaction accounts." Ex. 1001, 3:20–22. For ease of reference, we will also refer to these claim limitations as "bidirectional accounts."

Through its briefing (PO Reply 4–5) and at oral argument, Patent Owner appears to proffer a construction of bidirectional accounts that distinguishes bidirectional accounts from the prior art. Unfortunately, we are unable to discern precisely what that construction is. The closest we are able to discern as pertaining to a claim construction, from Patent Owner's assertions, is that bidirectional accounts cannot have extra steps. To that end, we are unclear as to the relevance of steps in relation to bidirectional accounts, as bidirectional accounts would indicate an account having specific features, not steps. Presumably there are a non-trivial number of steps necessary in order to achieve a bidirectional account. Insofar as the claim limitation at issue only recites the end-product of those steps, however, and not the steps necessary to achieve the end-product, Patent Owner's assertions are misplaced. By analogy, if a claim limitation recites "a half-red and half-blue vehicle," Patent Owner is asserting that because the vehicle in the prior art was originally blue, and then portions of it were later painted red, it cannot correspond properly to the recited "half-red and half-

12

CBM2014-00159
Patent 8,396,808 B2

blue vehicle," because the red portion took extra steps to create. These extra steps are immaterial, as all that matters is whether the prior art discloses "a half-red and half-blue vehicle."

Even if steps were somehow relevant to a claim construction of bidirectional accounts, however, we are unpersuaded that Patent Owner's assertions are correct. A basic canon of patent law is that, absent limiting language, a claimed step does not preclude additional steps, so long as the claim language is met. As an illustration, assume we have a claim limitation of "walk 100 meters west." Presumably, the fastest way to accomplish that feat is to walk 100 meters directly in the westerly direction. Assume, however, that the prior art has an individual that instead walks 25 meters west, but then decides to go 10 meters north, walks another 50 meters west, goes 10 meters south, and then another 25 meters west. So, the individual has still met the limitation "go 100 meters west," but has taken additional steps that resulted in the individual walking 20 extra meters. Under Patent Owner's rationale, because the individual in the prior art took the additional steps of walking 10 meters north and 10 meters south, it would not meet the claim limitation "walk 100 meters west." Because the claim limitation in our example does not preclude the extra 20 meters, and bidirectional accounts similarly does not preclude additional steps to achieve that result, we are unpersuaded that Patent Owner's assertion is correct.

Patent Owner may be asserting that in order to meet "bidirectional accounts," a particular account must function *simultaneously* as both a merchant account and purchaser account. We disagree.

Beginning with the claim terms themselves, the word "selectively" is used. We discern that the ordinary and customary usage of this word

13

CBM2014-00159
Patent 8,396,808 B2

denotes expressly that a particular account need *not* function *simultaneously* as both a merchant account and a purchaser account; a user is permitted expressly to *select* which account mode is desired at the appropriate point in time. The following disclosure in the Specification is consistent with this understanding:

> An entity (e.g., a person, business, or other legally recognized entity) preferably creates an account within the payment system. The accounts of the payment system are preferably designed so that an account may selectively function as either a merchant or a purchaser during any particular transaction. In other words, within the scope of all transactions, accounts of the payment system can function as bi-directional transaction accounts.

Ex. 1001, 3:15–22. Indeed, here, the Specification discloses expressly that being able to select which account mode is desired is the same as "bi-directional transaction accounts."

More specifically, Patent Owner appears to assert that because the purchaser mode and the merchant mode of the account in the prior art each has a different payment type (i.e., payment card for purchaser and Automated Clearing House (ACH) for a merchant), and neither payment type can be used in the reverse mode (i.e., payment card for merchant and ACH for a purchaser), the aforementioned claim limitation is not met. Patent Owner's assertions are misplaced, as the claim limitation does not require that the payment type be the same for both the purchaser mode and the merchant mode of the account; on this point, the claim only requires that the account have a purchaser mode and a merchant mode. Thus, the fact that the purchaser mode of an account may rely on payment cards while the merchant mode of the account may rely on ACH is immaterial.

14

CBM2014-00159
Patent 8,396,808 B2

In conclusion, for the reasons set forth above, we are unpersuaded that "wherein the first account and the second account are adapted to selectively function as either a merchant or a purchaser account during any particular transaction," as recited in independent claim 1, requires any express construction. The same is true for the corresponding limitations recited in independent claims 20, 21, and 22. Specifically, we are unpersuaded that the aforementioned claim limitations should be construed as requiring any of the above features asserted by Patent Owner, for example, a limit on the number of steps.

### E. Obviousness of Claims 1–3, 5–7, 17, and 20–22 over Bemmel and Dalzell

Petitioner asserts that claims 1–3, 5–7, 17, and 20–22 are unpatentable over a combination of Bemmel and Dalzell. Pet. 18–38 (citing Exs. 1002, 1005, 1006); Reply 4–13 (citing Exs. 1002, 1005, 1006). Patent Owner disagrees. PO Resp. 10–20 (citing Exs. 1001, 1002, 1005, 1006, 1007, 1011, 1012, 2018, 2021).

#### 1. Bemmel (Ex. 1005)

Bemmel discloses "a mobile architecture for payment transactions and, more specifically, a method and system for providing biometric authentication at a point-of-sale ('POS')." Ex. 1005 ¶ 2. Specifically, Bemmel discloses receiving a mobile phone number from a consumer, generating an electronic wallet for the consumer containing the mobile phone number, establishing a voice connection with the consumer's mobile device associated with the mobile phone number, capturing a voice sample from the consumer, and storing the voice sample in association with the mobile phone number for biometric authentication purposes. Ex. 1005 ¶ 15.

15

Once a consumer is enrolled in the mobile payment system, the consumer is

then able to initiate payment transactions utilizing a mobile phone. Ex. 1005

¶ 16. Specifically, Bemmel discloses the following:

> Upon receiving the authentication identifier through the mobile phone (confirming authentication of the consumer), the consumer is able to conduct a transaction at a merchant point-of-sale terminal through the teachings disclosed herein. In particular, when the consumer interacts with the merchant's point-of-sale terminal, the mobile payment system receives a request from the merchant point-of-sale terminal for consumer information (e.g., payment information such as a credit card, debit card or checking account numbers, etc.) with the request including the authorization identifier, it matches the authorization identifier with a stored authorization identifier (for example and without limitation, "staged" transaction as further detailed herein) in order to obtain a consumer identifier associated with the stored authorization identifier, and it transmits stored consumer information (e.g., payment information such as a credit card, debit card, checking account, etc.) associated with the consumer identifier to the merchant point-of-sale terminal, which enables the merchant point-of-sale to authorize the transaction by communicating with a payment processor.

Ex. 1005 ¶ 17.

### 2.    Dalzell (Ex. 1006)

Dalzell "relates to electronic marketplaces through which users buy

and sell items over a computer network." Ex. 1006 ¶ 2. Specifically,

Dalzell discloses user interfaces and methods through which users may place

items for sale, locate items offered by others, and perform related actions

within an electronic marketplace. Ex. 1006 ¶ 2. Dalzell discloses that the

online marketplace system includes a database of information about products

that may be listed by users within an online marketplace, with this

information typically including product IDs, and descriptions and product

CBM2014-00159
Patent 8,396,808 B2

images provided by manufacturers or distributors of the products. Ex. 1006
¶ 10. Dalzell further discloses the following:

> As is conventional, users of the marketplace system can
> register online as marketplace sellers and thereafter create
> marketplace listings. As part of seller registration and/or as
> marketplace listings are created, the system may allow the
> user/seller to specify shipping and other policies to be published
> to buyers, and specify a bank account into which proceeds from
> sales are to be deposited by the system or its operator.

Ex. 1006 ¶ 59.

### 3. *Analysis*

Petitioner asserts that Bemmel discloses most of the limitations of
claims 1–3, 5–7, 17, and 20–22. For the other limitations, Petitioner relies
on Dalzell. Specifically, exemplary independent claim 1 recites "[a] method
for transferring an electronic payment between a purchaser and a merchant."
Petitioner cites both Bemmel and Dalzell for disclosing these claim
limitations. Pet. 26 (citing Ex. 1005 ¶¶ 16, 17; Ex. 1006 ¶ 2). Independent
claim 1 recites further "assigning a role of a merchant account to a first
account and a role of a purchaser account to a second account within a
payment system wherein the first account and the second account are
adapted to selectively function as either a merchant account or a purchaser
account during any particular transaction." Petitioner cites Dalzell for
disclosing that marketplace users (i.e., buyers) can become marketplace
sellers, for example, by providing bank account information as to where
sales proceeds should be deposited. Pet. 26–27 (citing Ex. 1006 ¶¶ 27, 61,
87, 132). Independent claim 1 recites additionally "adding an item offered
for sale by the merchant from a product catalog stored in the payment
system to a purchase list." Petitioner cites Dalzell for disclosing a user

17

CBM2014-00159
Patent 8,396,808 B2

browsing a product catalog, and then selecting an "add to cart" or "buy from seller" button for a particular product from the catalog. Pet. 27 (citing Ex. 1006 ¶¶ 3, 10, 15, 166). Independent claim 1 recites also "obtaining a user ID token of the purchaser from a merchant terminal, the merchant terminal being at a merchant location and the merchant location being different from the payment system." Petitioner cites Bemmel for disclosing a consumer providing an authorization identifier to a payment terminal, and then the payment terminal sending the authorization identifier to a merchant gateway. Pet. 28 (citing Ex. 1005 ¶¶ 17, 62, 63, 65, Fig. 3; Ex. 1006 ¶ 121). Independent claim 1 recites further "communicating identity confirmation information associated with the user ID token to the merchant terminal." Petitioner cites Bemmel for disclosing that the mobile payment system matches the authorization identifier with a stored authorization identifier in order to obtain a consumer identifier associated with the stored authorization identifier, and transmits the stored consumer information associated with the consumer identifier to the merchant point-of-sale terminal, which enables the merchant point-of-sale to authorize the transaction by communicating with a payment processor. Pet. 28–29 (citing Ex. 1005 ¶¶ 17, 29, 41, 63, 69, claim 12). Independent claim 1 recites additionally "transferring funds for a purchase price total from the purchaser account to the merchant account." Petitioner cites each of Bemmel and Dalzell for disclosing these claim limitations. Pet. 29 (citing Ex. 1005 ¶ 88; Ex. 1006 ¶ 17).

For the rationale for combining Bemmel and Dalzell, Petitioner asserts the following:

> As further explained by Dr. Sadeh-Koniecpol, it would have been obvious to one of ordinary skill at the relevant time to combine the teachings of Bemmel with those of Dalzell so as

18

CBM2014-00159
Patent 8,396,808 B2

to teach each and every feature of claims 1–3, 5–7, 17, and 20–22 of the '808 patent. One of ordinary skill in the art would have recognized that Bemmel and Dalzell are directed to similar systems and methods: a system that allows purchasers and merchants to conduct electronic transactions on their computing devices (Bemmel) and an electronic marketplace allowing users to buy and sell goods through their computer devices (Dalzell). *See* Ex. 1002 at ¶¶ 137–140. Furthermore, in June 2009, it was common practice for individuals designing electronic payment systems to research and combine the features of existing systems, especially where those features were complementary; combining Bemmel and Dalzell therefore would have been well within the capabilities of a person of skill in the art, and would represent a commonsense amalgamation of the robust product catalog and user interface of Dalzell with the authentication and mobile aspects of Bemmel. *See* Ex. 1002 at ¶¶ 141.

Furthermore, both Bemmel and Dalzell expressly provide logical rationale and motivation for the proposed combination. Dalzell explicitly states that its disclosed electronic marketplace can be employed in mobile devices and kiosks, such as the purchaser terminals and merchant terminals disclosed in Bemmel. *See* Ex. 1005 at [0045], [0121] – [0122] (stating that the marketplace can be employed in "in-store kiosk systems" and "personal digital assistant[s]" or "micro-browser[s] adapted for use on a handheld device."); *see* Ex. 1002 at ¶ 138. Accordingly, Dalzell suggests implementation on a mobile device for use in a mobile commerce system, such as the system disclosed by Bemmel. *See* Ex. 1002 at ¶ 139. Indeed, during the relevant time period, many existing electronic and web-based systems, including payment systems, were adapted for use in the mobile context. *See id.* at ¶ 92. The Bemmel reference, in turn, can be readily combined with a system like the Dalzell electronic marketplace, and expressly suggests implementation in "merchant channels, such as, but not limited to, an online or e-commerce transaction architecture [that] could also make use of the claimed invention." Ex. 1005 at [0086]; *see* Ex. 1002 at ¶ 139. Both references therefore teach that combining their respective features would yield expanded

CBM2014-00159
Patent 8,396,808 B2

usability and other beneficial results as would be obvious to a
person of skill in the art.

Pet. 24–25. Petitioner makes similar analyses for claims 2, 3, 5–7, 17, and
20–22. Pet. 18–38.

Patent Owner asserts that neither Bemmel nor Dalzell discloses "line
item data." PO Resp. 11–14. Patent Owner's assertions are misplaced, for,
as set forth above, none of the claims recites or requires "line item data."

Even if the claims did recite or require "line item data," however, we
find that Dalzell discloses such "line item data." As set forth above, we
construe "line item data" as "itemized information from a larger group of
information, related to individual products involved in a purchase or sale,
that is capable of categorization," where non-limiting examples of "line item
data" may include one or more of "quantity, description, type, cost, product
identifier (e.g., stock keeping unit), tax, duty, shipping or other fees."
Dalzell is replete with references to such "line item data." For example,
Dalzell discloses that at least the following information can be gleaned from
a purchase history page for a user, and can be provided for both purchases
made from marketplace sellers and purchases made from provider sellers:
product ID, product description, product title, order number, price paid,
condition of item when purchased, order date, and shipping recipient.
Ex. 1006 ¶¶ 103, 132. These examples, individually and collectively, clearly

20

CBM2014-00159
Patent 8,396,808 B2

and unequivocally meet the aforementioned construction of "line item data."[9]

Patent Owner asserts further that Petitioner has failed to articulate a valid reason for combining Bemmel and Dalzell, because Dr. Sadeh-Koniecpol's opinions of industry custom are unsupported. We are unpersuaded that Dr. Sadeh-Koniecpol's opinions are unsupported, and especially unpersuaded that Dr. Sadeh-Koniecpol has not provided adequate support regarding the reasons for combining Bemmel and Dalzell. Dr. Sadeh-Koniecpol includes explicit citations to references, in particular Bemmel and Dalzell, for supporting his conclusions, and we determine that any purported "leaps of logic" taken by Dr. Sadeh-Koniecpol are reasonable given the underlying support. For example, Dr. Sadeh-Koniecpol opines that "one of ordinary skill in the art would have been motivated to combine the mobile payment system of Bemmel with the electronic marketplace of Dalzell." Ex. 1002 ¶ 136. Of course, this paragraph considered in isolation would be an unsupported opinion. Dr. Sadeh-Koniecpol, however, then goes on to support this opinion with explicit citations to Bemmel and Dalzell. Ex. 1002 ¶¶ 137, 139, 140. Dr. Sadeh-Koniecpol then reaches conclusions that we determine flow logically from those citations. Ex. 1002 ¶¶ 138, 141, 142.

---

[9] Insofar as Patent Owner may be asserting that "line item data" includes "other features" that would prevent the aforementioned examples from Dalzell from corresponding to "line item data," for example, technical limitations of ACH processing, Patent Owner did not set forth any such construction, and we are unable to discern independently such "other features" from this record.

21

CBM2014-00159
Patent 8,396,808 B2

By contrast, Patent Owner asserts the following:

> It was not industry custom to integrate product catalogs into payment systems. Generally, credit and debit card providers focused their innovative efforts on ways to prevent ever-increasing payment card fraud, not on ways to increase data transparency. Online marketplaces and mobile payments have been around since roughly the late 1990s. Yet, the '808 Patent was the first to integrate these two systems. Until the '808 Patent, these systems and their features were not considered complementary. Instead, they were considered different and independent systems and their combination would require improper hindsight. (*See* Ex. 2021, ¶ 29.)

> Even after July 31, 2009, the payments industry was not interested in integrating product catalogs into payments systems. Rather, the industry viewed doing so as "counterintuitive, technically problematic, and economically undesirable." (Id., ¶¶ 9-12.) In fact, there is not even room in the traditional format for ACH payments data to include line item data; so integrating a product catalog into a payment system is not at all obvious. (*Id.*)

PO Resp. 14–15 (citing Ex. 2021). These assertions claim support in several paragraphs of a Declaration of Mr. Aaron Greenspan. As an initial matter, we note that the presence of corroborative evidence is especially important in evaluating Mr. Greenspan's testimony, because Mr. Greenspan is the named inventor of the '808 patent. In analogous contexts, the Federal Circuit has held repeatedly that in order to guard "against courts being deceived by inventors who may be tempted to mischaracterize the events of the past through their testimony," the law requires corroboration of a putative inventor's credible testimony, the sufficiency of which is measured under a "rule of reason" standard. *Gen. Elec. Co. v. Wilkins*, 750 F.3d 1324, 1330 (Fed. Cir. 2014) (citing *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1374 (Fed. Cir. 2009)); *see also Bell & Howell Document*

22

CBM2014-00159
Patent 8,396,808 B2

*Mgmt. Prod. Co. v. Altek Sys.*, 132 F.3d 701, 706 (Fed. Cir. 1997) ("the
testimony of an inventor . . . concerning claim construction . . . often is
self-serving, after-the-fact attempt to start what should have been part of his
or her patent application"). To that end, we note that of Patent Owner's
citations to paragraphs 9–12 and 29 of Mr. Greenspan's Declaration in
support of its assertions on this topic, none cites corroborating evidence.
Paragraph 9 does make note of topics purportedly discussed at a NACHA
Internet Council Meeting. However, paragraph 9 does not cite any
document, exhibit, or testimony to support Mr. Greenspan's assertions as to
what was discussed at that meeting. The same analysis is applicable to
paragraph 10.[10] Paragraph 29 does mention Bemmel and Dalzell, however,
Mr. Greenspan does not include specific citations to Bemmel and Dalzell to
support specific assertions, and the second half of the paragraph concerns
issues that Mr. Greenspan admits are beyond the purview of Bemmel and
Dalzell, limiting their value as corroborating evidence. Accordingly, when
evaluated under the rule-of-reason framework, paragraphs 9–12 and 29 of
Mr. Greenspan's Declaration are entitled to little weight.

---

[10] Insofar as Patent Owner is attempting to use Exhibits 2037–2040, cited in
its Reply to Motion to Amend, as corroborative evidence concerning the
NACHA meetings held on February 24–25, 2010, and June 23–24, 2010,
those assertions should have been set forth in the Patent Owner Response.
Furthermore, even when we evaluate the evidence, while they are clearly
corroborative evidence of Mr. Greenspan's presence and speaking at the
February 24th meeting, neither Patent Owner nor Mr. Greenspan have
explained, and we are unable to ascertain, corroboration of the relevant
substantive assertions made by Mr. Greenspan in paragraphs 9 and 10 of his
Declaration.

23

CBM2014-00159
Patent 8,396,808 B2

Absent much supporting weight from Mr. Greenspan's Declaration, Patent Owner's above assertions are almost entirely unpersuasive, and are insufficient to outweigh the assertions set forth by Petitioner that are supported by the testimony of Dr. Sadeh-Koniecpol. For example, Patent Owner asserts that "[i]t was not industry custom to integrate product catalogs into payment systems." PO Resp. 14. Patent Owner does not provide any direct evidentiary support for this assertion, and any support that can be tangentially extrapolated from paragraphs 9–12 and 29 of Mr. Greenspan's Declaration is entitled to little weight for the reasons set forth above. By contrast, Dr. Sadeh-Koniecpol's Declaration includes explicit citations to Bemmel and Dalzell, and the cited portions of those references, respectively, state unambiguously that the payment system features of Bemmel can be applied to an online or e-commerce transaction architecture (Ex. 1002 ¶ 139 (citing Ex. 1005 ¶ 86)), and that the product catalog features of Dalzell can be applied to "run on 'any type of computing device that enables a user (including both buyers and sellers) to interactively and remotely access the marketplace web site system 515 via the communication network' including 'a computer device that runs a proprietary client program, an interactive kiosk, a personal digital assistant[.]'" Ex. 1002 ¶ 137 (citing Ex. 1006 ¶¶ 121–122). Given this record, we are persuaded that, contrary to Patent Owner's assertions, it was known to integrate product catalogs into payment systems, and vice versa, at the time of the filing of the '808 patent. This analysis is also applicable to the other assertions made above by Patent Owner.

Patent Owner asserts further that Dr. Sadeh-Koniecpol's Declaration is problematic, because he does not identify which specific features are

24

CBM2014-00159
Patent 8,396,808 B2

complementary or explain why they are complementary. We disagree, as
Dr. Sadeh-Koniecpol identifies explicitly that the product catalog of Dalzell
and authentication system of Bemmel are complementary (Ex. 1002 ¶ 142),
and the explanation is set forth in the previous paragraphs of his Declaration.
Ex. 1002 ¶¶ 137–141.

Patent Owner asserts more specifically that there may be technical
challenges to implementing the proffered combination of Bemmel and
Dalzell, and that those technical challenges are not adequately addressed by
Petitioner. Patent Owner's assertions are misplaced and unpersuasive. "A
person of ordinary skill is also a person of ordinary creativity, not an
automaton." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007).
Accordingly, the fact that there may be technical challenges to implementing
a proffered combination of two references is unavailing if the technical
challenges would have been solvable by one of ordinary skill in the art at the
time of the invention. To that end, we are persuaded that one of ordinary
skill would have been able to overcome those technical challenges, for
example, because Bemmel and Dalzell each disclose explicitly that mixing
and matching different features in the e-commerce area was known and
routine. Ex. 1005 ¶ 86; Ex. 1006 ¶¶ 45, 121–122.

Similarly, Patent Owner asserts generally that there would be many
technical challenges to adapting the ACH system to accept line item data.
There are many problems with this assertion. First of all, for the reasons
discussed above, the claims do not require line item data. Furthermore, the
claims also do not recite or mention anything about the ACH system.
Additionally, Patent Owner asserts that adapting the ACH system to accept
line item data would involve accommodating increased amounts of data. As

25

CBM2014-00159
Patent 8,396,808 B2

an initial matter, because line item data can be as little as a few characters, and the ACH system can, at a minimum, transfer a few characters, we are unclear as to why the ACH system cannot already accommodate line item data. Moreover, we are unpersuaded that increasing the transmission capacity of the ACH system, while certainly daunting on a practical and cost basis, would not have been known and within the abilities of one of ordinary skill in the art. We are unpersuaded that one of ordinary skill at the time of the invention would have been unfamiliar with ways in which to increase transmission capacity.

Insofar as Patent Owner may be arguing as to any technical challenges associated specifically with combining Bemmel and Dalzell, we note that the obviousness inquiry does not ask "whether the references could be physically combined but whether the claimed inventions are rendered obvious by the teachings of the prior art as a whole." *In re Etter*, 756 F.2d 852, 859 (Fed. Cir. 1985) (en banc); *see also In re Keller*, 642 F.2d 413, 425 (CCPA 1981) (stating "[t]he test for obviousness is not whether the features of a secondary reference may be bodily incorporated into the structure of the primary reference"). To that end, our determination is the same as that set forth above.

Patent Owner asserts additionally that Dr. Sadeh-Koniecpol's testimony should be given little weight due to the mechanics of how his Declaration was drafted and certain observations concerning his cross-examination. Concerning the mechanics of Declaration drafting, we have reviewed the Declarations of Dr. Sadeh-Koniecpol (Exs. 1002, 1021), as well as the transcript of his deposition (Exs. 2019–2020). We find that the manner of Dr. Sadeh-Koniecpol's testimony is completely in line with

26

CBM2014-00159
Patent 8,396,808 B2

typical testimony before the Board, and agree with Petitioner that, absent *much* further elaboration and analysis (which we do not authorize), Patent Owner's line of inquiry concerning the mechanics of declaration preparation is "a waste of time, both for the witness and the Board." *Pevarello v. Lan*, Patent Interference 105,394 MPT, slip op. at 19–21 (BPAI Jan. 12, 2007) (Paper 85). As to the observations during cross-examination, we note that while we have considered them, any purported inconsistencies or gaps in knowledge are vastly outweighed by Dr. Sadeh-Koniecpol's background, analysis, and supporting evidence, which we find credible and persuasive overall.

Patent Owner asserts also that Petitioner has failed to provide an adequate predictable results analysis, because the proffered combination is merely possible. Patent Owner's assertions are misplaced, as almost any obviousness analysis, especially one involving multiple references, is a hypothetical analysis of possibilities. Nevertheless, if such a hypothetical analysis is supported and persuasive, as we determine it is here, it is nonetheless legally sufficient in rendering claims obvious.

Patent Owner asserts further that the proffered combination of Bemmel and Dalzell would not have predictable results. We disagree. As an initial matter, we note that a predictable results analysis is typically applicable to generally unpredictable arts, such as biology or chemistry. *In re Fisher*, 427 F.2d 833, 839 (CCPA 1970) (indicating patents in the mechanical or electrical arts involve predictable factors compared to the more unpredictable chemical and biological arts). To that end, Patent Owner has not explained sufficiently precisely what would be unpredictable here. At a high level, the combination is the bio-authentication purchasing system

27

CBM2014-00159
Patent 8,396,808 B2

of Bemmel with the product catalog of Dalzell. The self-evident result is a
product catalog integrated with a bio-authentication purchasing system. We
are unpersuaded that such a result is not predictable.

Patent Owner asserts additionally that the Board should exercise its
discretion under 35 U.S.C. § 325(d) and deny the Petition, because similar
art was already before the Examiner during prosecution. We note that 35
U.S.C. § 325(d) is normally exercised in a Decision on Institution.
Moreover, we have already conducted a full trial in this proceeding
subsequent to a Decision on Institution. Furthermore, 35 U.S.C. § 325(d) is
discretionary, and insofar as Patent Owner is requesting any vacating of the
Decision on Institution, we decline to do so for the reasons set forth above.

In Patent Owner's Reply concerning its Motion to Amend, Patent
Owner asserts that Dalzell does not disclose or render obvious "bidirectional
accounts," because Dalzell requires extra steps to implement such accounts.
PO Reply 4–5. As set forth above, we are unpersuaded that the presence of
extra steps is relevant to whether or not a prior art reference discloses a
bidirectional account. Furthermore, Patent Owner is admitting essentially
that after implementation of the "extra" steps in Dalzell, the result is that an
account which originally had only buyer capabilities now also has seller
capabilities. Tr. 29:1–30:8. We agree. We find further that this account of
Dalzell corresponds properly to the "bidirectional accounts" required by
independent claims 1 and 20–22.

Patent Owner asserts additionally that the accounts in Dalzell cannot
be "bidirectional accounts," because they have separate payment systems.
As set forth above, we are unpersuaded that the claims place such limitations
on the number of payment systems, and as a matter of logic, we are

28

CBM2014-00159
Patent 8,396,808 B2

unpersuaded that a single account cannot be associated with multiple payment systems.

Patent Owner further asserts the following:

> To get around this, Dr. Sadeh makes an unsupported logical leap. (Ex. 1002 at ¶ 151). "As illustrated in the citation listed above, according to Dalzell, a user account stores both payment information and bank account information (in particular for sellers). For each account, the system stores the information necessary for that account to be both a buyer and seller. *See also* Ex. 1006 at [0061]." (*Id.*) The first sentence is true, but the second sentence is not because, *as [0059] points out, the system must create a new and separate account for sellers that also uses separate payment data*, and therefore the system does not "store[ ] the information necessary for that account to be both a buyer and seller." (*Id.*)

PO Reply 5 (emphasis added). We are unpersuaded that Patent Owner's above-emphasized assertion is correct, because our review of paragraph 59 of Dalzell does not support Patent Owner's assertion that a new seller account must be created. Indeed, we find that a more logical reading of paragraph 59 of Dalzell is that a buyer, from a particular account, can add a seller feature to that particular account, without the need to create a whole new account. Such a finding is supported by extensive analysis and testimony by Dr. Sadeh-Koniecpol, with explicit citations to Dalzell, which we find credible, reasonable, and persuasive. Ex. 1002 ¶¶ 147–164 (citing Ex. 1006 ¶¶ 9, 27, 49, 57, 61, 82, 85, 87, 132, 163, Figs. 1A, 1B).

#### 4. Conclusion

For the foregoing reasons, after considering the Petition, Patent Owner Response, Reply, and all supporting evidence, we are persuaded that Petitioner has shown, by a preponderance of the evidence, that claims 1–3,

29

CBM2014-00159
Patent 8,396,808 B2

5–7, 17, and 20–22 are unpatentable over a combination of Bemmel and
Dalzell.

    *F.    Obviousness of Claim 4 over Bemmel, Dalzell, and Carlson*

    Petitioner argues that the subject matter of claim 4 would have been
obvious over the combination of Bemmel, Dalzell, and Carlson. Pet. 42–43.
Patent Owner does not direct any argument in the Patent Owner Response to
this particular challenge. We have considered the arguments and evidence
of record concerning this challenge and are persuaded that Petitioner has
shown, by a preponderance of the evidence, that claim 4 is unpatentable on
this basis.

    *G.    Obviousness of Claims 9, 10, and 13–15 over Bemmel, Dalzell,
        and Tripp*

    Petitioner argues that the subject matter of claims 9, 10, and 13–15
would have been obvious over the combination of Bemmel, Dalzell, and
Tripp. Pet. 43–46. Patent Owner does not direct any argument in the Patent
Owner Response to this particular challenge. We have considered the
arguments and evidence of record concerning this challenge and are
persuaded that Petitioner has shown, by a preponderance of the evidence,
that claims 9, 10, and 13–15 are unpatentable on this basis.

    *H.    Obviousness of Claim 11 over Bemmel, Dalzell, and Elston*

    Petitioner argues that the subject matter of claim 11 would have been
obvious over the combination of Bemmel, Dalzell, and Elston. Pet. 46–48.
Patent Owner does not direct any argument in the Patent Owner Response to
this particular challenge. We have considered the arguments and evidence
of record concerning this challenge and are persuaded that Petitioner has

CBM2014-00159
Patent 8,396,808 B2

shown, by a preponderance of the evidence, that claim 11 is unpatentable on this basis.

    *I.*    *Obviousness of Claim 16 over Bemmel, Dalzell, and Deschryver*

Petitioner argues that the subject matter of claim 16 would have been obvious over the combination of Bemmel, Dalzell, and Deschryver. Pet. 48–50. Patent Owner does not direct any argument in the Patent Owner Response to this particular challenge. We have considered the arguments and evidence of record concerning this challenge and are persuaded that Petitioner has shown, by a preponderance of the evidence, that claim 16 is unpatentable on this basis.

    *J.*    *Patent Owner's Motion to Amend*

    *1.*    *Introduction*

Patent Owner's Motion to Amend seeks to substitute new claims 23–43 for original claims 1–18 and 20–22, respectively.[11] PO Motion 1–24. The ultimate burden of persuasion is with Patent Owner, the movant, to demonstrate the patentability of the amended claims. *See Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1307 (Fed. Cir. 2015). For the reasons discussed below, Patent Owner has not met that burden, and, thus, the Motion to Amend is *denied.*

---

[11] At oral argument, there was some confusion as to whether or not Patent Owner actually intended to cancel dependent claim 8, and whether or not Petitioner had detrimentally relied on Patent Owner's assertions concerning dependent claim 8 in the Patent Owner Response. As the Motion to Amend is denied in its entirety, however, that issue is moot.

31

CBM2014-00159
Patent 8,396,808 B2

### 2. Proposed Substitute Claims

Patent Owner proposes to substitute independent claim 1 with

independent claim 23, as follows:

> 23.    A method for transferring an electronic payment
> between a purchaser and a merchant comprising:
>     assigning a role of a merchant account to a first account
> and a role of a purchaser account to a second account with a
> payment system wherein the first account and the second
> account are adapted to selectively function as either a merchant
> account  or  a  purchaser  account  during  any  particular
> transaction, said payment system storing and communicating
> line item transaction data;
>     adding an item offered for sale by the merchant from a
> product catalog stored in the payment system to a purchase list;
>     obtaining a user ID token of the purchaser from a
> merchant terminal, the merchant terminal being at a merchant
> location and the merchant location being different from the
> payment system;
>     communicating  identity  confirmation  information
> associated with the user ID token to the merchant terminal; and
>     transferring funds for a purchase price total from the
> purchaser account to the merchant account.

Essentially, Patent Owner proposes to require "line item transaction

data" expressly in independent claim 23.  The same is true for proposed

claims 24–43, which correspond, respectively, to original claims 2–18 and

20–22.

### 3. Analysis

We deny Patent Owner's Motion to Amend for a variety of reasons.

As an initial matter, we note that the dispute concerning the instituted

grounds of unpatentability had to do with whether or not the recited

"purchase list," "product catalog," and "transaction record" required "line

item data."  The proposed amendment does nothing to clarify this, as the

32

CBM2014-00159
Patent 8,396,808 B2

"line item transaction data," in proposed independent claim 23, is completely disembodied from "purchase list," "product catalog," and "transaction record."

Even when we consider the added claim limitation, however, we are unpersuaded that it distinguishes the claimed invention from the prior art combinations set forth in the instituted grounds of unpatentability. Specifically, as set forth above in our claim construction analysis, we determined that "line item data" should be construed as "itemized information from a larger group of information, related to individual products involved in a purchase or sale, that is capable of categorization," where non-limiting examples of "line item data" may include one or more of "quantity, description, type, cost, product identifier (e.g., stock keeping unit), tax, duty, shipping or other fees." We also noted above that we could not discern any practical difference between "line item data" and "line item transaction data." As additionally set forth above, we found that Dalzell clearly and unequivocally discloses examples that correspond to the aforementioned construction of "line item data," and are persuaded that Bemmel and Dalzell are combinable for the reasons set forth above. Accordingly, given these determinations and findings, most of Patent Owner's assertions concerning the purported failure of certain prior art references to disclose "line item transaction data" are either unpersuasive or

CBM2014-00159
Patent 8,396,808 B2

moot, and all that is left to evaluate are Patent Owner's assertions concerning secondary considerations.[12]

Patent Owner asserts that there was a long-felt need for the invention of the '808 patent, and in support provides the Declaration of Mr. Greenspan and several supporting exhibits. PO Motion 15–16 (citing Ex. 2021 ¶¶ 5–8, 19; Exs. 2026, 2028); PO Reply 1–3 (citing Ex. 2021 ¶¶ 6, 9–12; Exs. 2037, 2039, 2040, 2042, 2043, 2044). To be given substantial weight in the determination of obviousness or non-obviousness, evidence of secondary considerations must be relevant to the subject matter as claimed, and therefore it must be determined whether there is a nexus between the merits of the claimed invention and the evidence of secondary considerations. *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 305 n.42 (Fed. Cir. 1985). Patent Owner does not even mention the word "nexus," and indeed, there is no analysis made between the proposed claims and what was or was not the subject of long-felt need. Patent Owner's assertion of secondary consideration is unpersuasive on this point alone. We will assume from Patent Owner's assertions concerning secondary considerations, however, a general intent to establish a nexus with "line item

---

[12] We note, however, that even if we were to determine that the secondary considerations weighed in favor of Patent Owner, such secondary considerations still must be weighed with the other factors set forth in *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17–18 (1966), concerning obviousness. *In re Cyclobenzaprine Hydrochloride Extended–Release Capsule Patent Litig.*, 676 F.3d 1063, 1076–77 (Fed. Cir. 2012). To that end, we note that the other three *Graham* factors weigh heavily against a determination of the non-obviousness of claims 23–43 for the reasons set forth above.

CBM2014-00159
Patent 8,396,808 B2

data," even though focusing solely on one feature of the claims is insufficient generally to establish nexus.

The primary evidence cited by Patent Owner in support of its assertions concerning long-felt need is the testimony of Mr. Greenspan (Ex. 2021 ¶¶ 5–12, 19). These paragraphs suffer from the same flaws as above concerning the testimony of interested parties, namely, a lack of corroborative evidence. Specifically, the only corroborating evidence cited in Mr. Greenspan's Declaration is in paragraph 6 with support to page 165 of the book Strategic Marketing in Practice 2007–2008 (Ex. 2042). We have considered that evidence. However, its corroborative value for showing long-felt need is undermined by Patent Owner's observation, which we agree with, that "[t]o the extent that the authors describe a solution to this problem, they also note that it works with only four banks." PO Motion 5. In other words, the evidence, for example, Figures 3 and 4 of Exhibit 2042, shows that even if there was a long-felt need, a solution was known as of 2007–2008. An assertion of long-felt need loses almost all persuasive value if the prior art shows a solution to that long-felt need. The fact that the solution was limited to "only four banks" is immaterial. There is nothing in the claims that requires widespread adoption; adoption by a small number of parties, and documentation of that adoption in a printed publication, is sufficient to show that it was known and would have been obvious. Regarding the corroborative evidence concerning NACHA meetings held on February 24–25, 2010, and June 23–24, 2010 (Exs. 2037–2040), while they are clearly corroborative evidence of Mr. Greenspan's presence and speaking at the February 24th meeting, neither Patent Owner nor Mr. Greenspan has explained, and we are unable to ascertain, any mention of

35

CBM2014-00159
Patent 8,396,808 B2

long-felt need concerning line-item data in this evidence. Finally, regarding

Exhibits 2043 and 2044, Patent Owner asserts the following:

> The authors of the book, *Strategic Marketing in Practice*, thought they had found software ("Signifo," now "webexpenses") in 2007 that solves the problem central to the '808 Patent, but they did not, because Signifo does not transfer line item data. The book's Figure 4 (Ex. 2042, loc. 3859 of 6384) shows each line as a different *transaction*; line item data can only be *manually entered* with a separate, offline product shown in Figure 3 (Id., loc. 3849 of 6384). Even today, Signifo still does not offer line item data integration. (Ex. 2043 & 2044.) Thus, the referenced software does not actually transmit or receive line item data from any bank.

PO Reply 3. As an initial matter, Patent Owner does not explain adequately

the contents of Exhibits 2043 and 2044. The limitation that Patent Owner

proposes to add is "said payment system storing and communicating line

item transaction data." Patent Owner has not explained adequately how

Exhibits 2043 and 2044 correspond to the aforementioned claim limitation,

let alone provide corroborative evidence of long-felt need. If anything, as

best we are able to ascertain on our own, these Exhibits also undercut Patent

Owner's assertions concerning long-felt need, because Exhibit 2043

discloses importing credit card items, and Exhibit 2044 discloses uploading

a credit card file and categorizing line items. Far from providing

corroborative evidence of long-felt need, these Exhibits would appear to

disclose actual implementations of "said payment system storing and

communicating line item transaction data."

We determine that Patent Owner has not shown that any of the

*Graham* factors, either individually or collectively, weigh in favor of the

non-obviousness of proposed substitute claims 23–43.

36

CBM2014-00159
Patent 8,396,808 B2

### 4. Conclusion

Patent Owner has failed to carry its burden of demonstrating the patentability of amended claims 23–43. Accordingly, Patent Owner's Motion to Amend is *denied*.

### K. Petitioner's Motion to Exclude

Petitioner seeks to exclude Exhibit 2042 under Federal Rule of Evidence 106, Exhibits 2036–2044 as being outside the scope of a proper Reply to Motion to Amend, and certain arguments set forth in the Reply to Motion to Amend as being outside the scope of a proper Reply to Motion to Amend. Mot. Exc. 1–2. As the Board has considered all of the challenged Exhibits and assertions, and determines that Petitioner still prevails both regarding the unpatentability of claims 1–7, 9–11, 13–17, and 20–22, as well as the Motion to Amend, Petitioner's Motion to Exclude is *denied* as moot.

## III. CONCLUSION

Petitioner has demonstrated, by a preponderance of the evidence, that claims 1–7, 9–11, 13–17, and 20–22 of the '808 patent are *unpatentable*. Patent Owner's Motion to Amend is *denied*. Petitioner's Motion to Exclude is *denied*.

## IV. ORDER

In consideration of the foregoing, it is hereby:

ORDERED that claims 1–7, 9–11, 13–17, and 20–22 of the '808 patent are held *unpatentable*;

FURTHER ORDERED that Patent Owner's Motion to Amend is *denied*;

CBM2014-00159
Patent 8,396,808 B2

FURTHER ORDERED that Petitioner's Motion to Exclude is *denied*; and

FURTHER ORDERED that because this is a final written decision, parties to the proceeding seeking judicial review of the decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

CBM2014-00159
Patent 8,396,808 B2


For PETITIONER:

Michael T. Rosato
Robin L. Brewer
WILSON SONSINI GOODRICH & ROSATI, P.C.
mrosato@wsgr.com
rbrewer@wsgr.com


For PATENT OWNER:

Sean Goodwin
Michael Aschenbrener
ASCHENBRENER LAW, P.C.
sgg@aschenbrenerlaw.com
mga@aschenbrenerlaw.com

Filed on behalf of Think Computer Corporation

By:    Isaac Rabicoff (isaac@rabilaw.com)
       Rabicoff Law LLC
       100 N Lasalle Suite 2400
       Chicago, IL 60602
       Tel: (773) 669-4590
       Fax: (312) 984-1504
       Michael Aschenbrener (mja@aschenbrenerlaw.com)
       Aschenbrener Law, P.C.

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

SQUARE, INC.
Petitioner

v.

THINK COMPUTER CORPORATION
Patent Owner

_____

Case No.: CBM2014-00159
Patent 8,396,808

_____

**PATENT OWNER THINK COMPUTER CORPORATION'S
REQUEST FOR REHEARING PURSUANT TO 37 C.F.R. §42.71**

# TABLE OF CONTENTS

I.    Relief requested under 37 C.F.R. §42.71.......................................................1

II.   Introduction .................................................................................................1

III.  The Board overlooked or misapprehended the phrase "any particular transaction"...............................................................................................2

IV.   Dalzell fails to meet the claims' requirements...........................................7

V.    Line Item Data.............................................................................................10

VI.   Conclusion...................................................................................................15

## I.    Relief requested under 37 C.F.R. §42.71

Patent Owner Think Computer Corporation ("Patent Owner" or "Think")

respectfully requests that the Board reconsider and reverse its decision (Paper 47,

the "Decision") ordering that claims 1-7, 9-11, 13-17, and 20-22 of U.S. Patent No.

8,396,808 ("the '808 patent") are held unpatentable. In the alternative, Patent

Owner respectfully requests that the Board grant Patent Owner's motion to amend.

## II.    Introduction

When considering a request for rehearing of a decision on a petition, the

Board reviews the decision for an abuse of discretion. 37 C.F.R. § 42.71(c). An

abuse of discretion may arise if a decision is based on an erroneous interpretation

of law, if a factual finding is not supported by substantial evidence, or if an

unreasonable judgment is made in weighing relevant factors. *Star Fruits S.N.C. v.*

*U.S.*, 393 F.3d 1277, 1281 (Fed. Cir. 2005); *Arnold P'ship v. Dudas*, 362 F.3d

1338, 1340 (Fed. Cir. 2004); *In re Gartside*, 203 F.3d 1305, 1315-16 (Fed. Cir.

2000). The party requesting rehearing has the burden of showing that the decision

should be modified, and "[t]he request must specifically identify all matters the

party believes the Board misapprehended or overlooked." 37 C.F.R. § 42.71(d).

Patent Owner respectfully requests that the Board reconsider its decision to

invalidate claims 1-7, 9-11, 13-17, and 20-22 of the '808 Patent ("Invalidated

Claims"). The discussion below will demonstrate that the Board has inadvertently

overlooked and/or misapprehended key points already in the record, including but not limited to a crucial phrase in the independent claims of the '808 Patent.

## III.    The Board overlooked or misapprehended the phrase "any particular transaction"

The Board overlooked or misapprehended the proper construction of the Invalidated Claims, all of which include the clear limitation (or depend on a claim that does) that financial account role assignments "are adapted to selectively function as either a merchant account or a purchaser account *during any particular transaction,*" Ex. 1001 at 9:62-64, 11:6-8, 12:1-2, 12:29-31 (emphasis added). Fundamentally, this phrase means that all of these claims *require* that one account can simultaneously assume the role of a merchant account in Transaction A while assuming the role of a purchaser account in a different Transaction B.

Patent Owner's arguments are consistent with and have been previously argued by Patent Owner. For example, Patent Owner has always held that the bi-directional payment system functionality is a necessary limitation to all of the claims. *See, e.g.* Paper 7 at 8, 17. Even Petitioner concedes that a bi-directional account "is shorthand for referring to an entire claim element that embodies this concept of assigning a role of a purchaser or a merchant." Paper 46, 38:5-7.

In its Decision, the Board relies *exclusively* on the meaning of the word "selectively" when construing the phrase "wherein the first account and the second account are adapted to selectively function as either a merchant or a purchaser

account during any particular transaction," interpreting it to involve selection of the account roles by a human being, rather than the payment system[1]. Decision at 11, 13-14. Nowhere does the Board consider the additional limitation created by the phrase "during any particular transaction."

Regardless of whether the payment system or a human directly selects the roles, all of the claims require that any particular financial account in the payment system *must* have the capability to *simultaneously* function as both a merchant account *and* a purchaser account within the broad scope of "*any particular transaction*," or in other words, all transactions. The invocation of the word "any" necessarily means that this functionality must work over a plurality of transactions.

In its Decision, the Board disagreed that this phrase necessarily means simultaneous account roles: "We discern that the ordinary and customary usage of this word ["selectively"] denotes expressly that a particular account need *not* function *simultaneously* as both a merchant account and a purchaser account; a user is permitted expressly to select which account mode is desired at the

---

[1]    The human user presumably exists, but is never alluded to directly in either the claims or the Specification as making the choice; the Specification describes the payment system making the selection. Ex. 1001 at 3:32 ("As part of the step of assigning a purchaser account and a merchant account, the payment system…").

appropriate point in time." *Id.* at 13-14. This interpretation, which was not advanced or shared by Petitioner at oral argument,[2] overlooks and/or misconstrues the proper construction of "any particular transaction," a limitation required by all claims. Each transaction requires two accounts: a "first" and a "second". *See, e.g.* Ex. 1001 at 9:59-60. Most importantly, independent Claims 1, 19 and 20 all specifically recite "any particular transaction," which means that this simultaneous merchant/purchaser account functionality must work over multiple transactions, because even if transactions are considered one at a time, any particular transaction might be the one chosen to evaluate, with account roles unpredictable in advance.[3] *Id.* at 9:62-64, 11:6-8, 12:1-2, 12:29-31.

This very issue of construction of the above phrase arose during the prosecution of the '808 Patent, just before the Notice of Allowance was issued. The USPTO Examiner misinterpreted this claim language in a manner similar to the Board's present misinterpretation. Ex. 1004 at 58. For this reason, Patent

---

[2]    *See* Paper 46, 39:1-14. Petitioner simply deferred to questions.

[3]    The Board may be interpreting the '808 Patent's scope as "*within each particular transaction.*" But as the Decision states, "every word in a claim limitation is usually presumed to have meaning," and here the words "*during any*" clearly indicate that a plurality of transactions must be evaluated.

Owner submitted a declaration containing the statement, "At that point it became clear to me that there was a need for an accounting and payment system that could **simultaneously** treat the same legal entity as both a client and a vendor without duplicating data, as described in claim 1 of the above referenced application..." (emphasis added). *Id.* at 60:26-61:2. The Examiner, therefore, ultimately agreed that claim 1 requires simultaneous differing account roles across the scope of all transactions. *Id.* at 10, 58. Patent Owner also clarified that:

> At most, [Wong] discloses that a *person* can assume these different roles, however, this does not teach that an *account within a payment system* is adapted to selectively function as either a merchant account or a purchaser account during any particular transaction, as in Applicant's claim 1" (emphasis in original).

Patent Owner further noted at that time that, "Wong et al. lacks such flexibility." *Id.* at 58. The Notice of Allowance was forthcoming after this exchange. *Id.* at 5[4].

The Specification underscores the disclosed invention's core functionality of simultaneous versatile account roles when reciting step S110: "the versatility of an entity account in the payment system enables simplified bookkeeping (e.g., elimination of duplicate database records)." Ex. 1001 at 3:29-32. Contrary to the Board's understanding, Patent Owner has never admitted that "essentially that after implementation of the 'extra' steps in Dalzell, the result is that an account which

---

[4]      Petitioner submitted the prosecution history in reverse chronological order.

originally had only buyer capabilities now also has seller capabilities." Decision at

28. Patent Owner's position has always been that Dalzell has no such accounts that

"also" have the opposite functionality; in Dalzell, buyer accounts and seller

accounts are separate and independent of one another, even if they happen to share

the same e-mail address as a username.[5]  Rather, the Board's cited passage in the

transcript, 29:1-30:8, is notable for the Board's expressions of confusion such as,

"Okay. You lost me there," and, "I guess I'm confused..." Paper 46 at 29:9, 30:5.

The Board quotes Ex. 1001, Specification 3:15–22, in support of its

assertion that "a particular account need not function simultaneously as both a

merchant account and a purchaser account." Decision at 13-14.  But the language,

"within the scope of all transactions, accounts of the payment system can function

as bi-directional transaction accounts," belies the Board's position for three reasons.

First, the Board focuses on the functionality of a single account (merchant or

purchaser) instead of the functionality of a single transaction. For *every* transaction,

the payment system "has a first account and...second account" that are "adapted to

---

[5]      Rather than indicating that Dalzell renders obvious the '808 Patent, this fact

actually validates the need for Patent Owner's invention, as the redundant e-mail

address is exactly the kind of data duplication the '808 Patent's Specification

discusses eliminating, thanks to versatile account roles, in column 3:29-32.

selectively function as either a merchant account or a purchaser account during any particular transaction." *See, e.g. id.* at 9:61-64. So every transaction *requires* the available functionality of those two accounts. Second, the Board appears to confuse *user* accounts that can, in theory—but *not* in Dalzell—be tied to multiple payment systems, with *financial* accounts, which can only belong to one payment system. *See, e.g.* Ex. 1001 at claim 1. Third, the quoted passage of the specification makes clear that the payment system's functionality of bi-directional transaction accounts is "*within the scope of all transactions*." Ex. 1001, 3:20–22 (emphasis added). The Board must have overlooked or misapprehended this; otherwise it could not assert that bi-directional account functionality is *not* a material limitation.

Accordingly, the Board should reconsider its interpretation of the above phrase, and hold that (1) bi-directional account functionality is a *required* limitation of all claims, and (2) accounts in the payment system *must* have the capability to *simultaneously* function as both a merchant account *and* a purchaser account for all transactions.

## IV.   Dalzell fails to meet the claims' requirements

With the construction of the phrase in the above section properly understood, Dalzell does not and cannot satisfy the requirements of any claim in the '808 Patent. All of the arguments in this section have been previously raised by Patent Owner. *See* Paper 7 at 17-19; *see also* Paper 21 at 18-20.

The '808 Patent demands that for a hypothetical new financial transaction, the payment system—which Dalzell is not, since it is merely a marketplace— appropriately assign the proper roles to two payment system accounts: one purchaser role to a first account, and one merchant role to a second. *See, e.g.* Ex. 1001 at claim 1. Already, Dalzell cannot reliably honor the assignment request for two reasons: A) a "second" account, whether user or financial, may not and most likely does not yet exist in the marketplace[6]; and B) even if it does exist in the marketplace due to a user's explicit request to optionally sign up as a seller, that account's role is fixed and does not accept assignment requests. That seller account can never "adapt[] to selectively function as either a merchant account or a purchaser account during any particular transaction," *id.* at 9:62-64, which is another way of saying that it cannot be "selected" on any basis at all. If the second account even exists—which all claims of the '808 Patent demand that it must for

---

[6]     *See* discussion of Dalzell paragraph [0059], involving the terms "can register" and "thereafter." Paper 32 at 4. *See also* paragraph [0061]: "Once registered with the marketplace system, a marketplace seller…" These steps are not merely extra; they are both extra and path-*determining*, such that the Board's "walk 100 meters west" (which should really involve two separate people) may ultimately involve one person running 300 meters south instead. Decision at 13.

every single transaction—it can only ever function as a seller account.

This same fixed-role logic applies both to Dalzell's uni-directional user accounts and to its uni-directional payment accounts. Dalzell clearly does not disclose or teach a bi-directional payment system. For example, the specification in Dalzell recites: "If the user has not yet registered as a seller, the user may be prompted to do so." Ex. 1006 at [0070]. Another passage demonstrates that a person skilled in the art would glean no teaching of a consistently and pervasively bi-directional-account-based system from Dalzell:

> The user may also be prompted to sign-in, and if applicable, to register as a seller (block 630). In one embodiment, an unregistered seller may finish creating the marketplace listing before registering, although buyers may be prevented from buying the listed item until registration is complete. As part of seller registration, the seller may be required, or given the option, to specify a bank account into which sales proceeds are to be automatically deposited by ACH transfer.

*Id.* at [0144].

Although the Board is correct that, "the claim limitation does not require that the payment type be the same for both the purchaser mode and the merchant mode of the account," Decision at 14, this point overlooks that Dalzell specifies that seller accounts only work with ACH *to send money from the marketplace to the seller*, and that purchaser accounts only with credit cards *to send money from the purchaser to the marketplace*. Ex. 1006 at [0167], [0088]. The problem is not that the payment methods are simply not identical, but rather that they are not each

adaptable, as defined by Dalzell, and even as observed by Dr. Sadeh, to function *in both directions*. Ex. 2019 at 75:15-17.

The Board misapprehends a required feature of all the claims when it states, "the claim only requires that the account have a purchaser mode and a merchant mode," Decision at 14. The claims require more, and Dalzell does not render any claim of the '808 Patent obvious by adding extra steps. The bi-directional account functionality is *required* in all claims, during *every* transaction. A POSITA would therefore lack the understanding or motivation to modify the Dalzell marketplace to incorporate bi-directional account functionality as required by these claims.

## V. Line Item Data

The Board misconstrues the interchangeable terms "line item data" and "line item transaction data" as "itemized information from a larger group of information, related to individual products involved in a purchase or sale, that is capable of categorization." Decision at 11. This definition overlooks that services and/or miscellaneous, uncategorizable items might be involved. Ultimately, the Board construes "line item data" well beyond its broadest reasonable interpretation. Patent Owner has raised these arguments throughout the proceedings. *See* Paper 7 at 37-39; *see also* Paper 46 at pp. 19-20.

In its Decision, the Board likens "line item data" to "fruit," as both can potentially involve many varieties of material. Yet if line item data is fruit, then the

purchase list is a fruit orchard—nothing more than an array of line item data. The

Board suggests that a purchase list could potentially be something more that is not

defined in the Specification or claims because "the Specification does not indicate

that those embodiments are limiting," Decision at 7, but provides no basis for its

unreasonably broad interpretation—and the Board's view is therefore not the

broadest *reasonable* interpretation. Decision at 7. The Specification, claims, and

diagrams are consistent and clear that the purchase list is derived directly from the

product catalog; the Specification further likens the purchase list to a "shopping

cart." *See* Ex. 1001 at 4:16; *see also id.* at 9:44. Furthermore, there is no alternative

construction posited as was true in *In re Van Geuns*, and "line item data" is not a

familiar natural principle, in the way that a magnetic field is. *In re Van Geuns*, 988

F.2d 1181, 1184 (Fed. Cir. 1993). For the above reasons, one of ordinary skill in

the art would appreciate that a purchase list is nothing more than an itemized list of

what is being purchased, i.e. line item data, per the Board's own definition.

The Board expresses distrust of the declaration of Aaron Greenspan, the

inventor of the '808 Patent, because it argues that paragraphs 9 and 10 of the

declaration, Exhibit 2021, lack citations. Decision at 23. Paragraph 9 references a

private conference meeting that was not recorded, so no additional citation to

written evidence is available beyond the "Industry Roundtables" agenda item on

page 3 of Exhibit 2039. Paragraph 10, however, is supported by evidence on the

record, and discusses the ACH standard, a well-known matter of public record, utilized by numerous federal agencies. Paragraph 10 is also supported by Ex. 2024, which demonstrates that as of 2012—three years after the '808 Patent was applied for—a major credit card processor, Authorize.Net, still did not support Level 3 data, let alone full line item data; as well as Ex. 2025, where Gus Fuldner discusses payment cards, independently echoing Mr. Greenspan's testimony:

> The description of the merchant and its location is just a text field with only 23 characters for the name of the business. There are large barriers to fundamentally changing these standards because there are tens of thousands of banks around the world...

Regardless, such concepts should be well-known to the Board in the context of a Covered Business Method proceeding. To the extent this is not already true, the Board misapprehends the functionality of the ACH system when it states:

> [B]ecause line item data can be as little as a few characters, and the ACH system can, at a minimum, transfer a few characters, we are unclear as to why the ACH system cannot already accommodate line item data.

Decision at 25-26. If doorframes were constructed to accommodate only the shortest children, all people, including adult basketball players, could not simply fit through. Basketball players cannot compress themselves into half their height, and doorframes tend to be constructed of inflexible materials. Nor can doorframes sense the presence of a Manute Bol (7'7" tall) and reconstruct themselves accordingly. Similarly, although line item data could in theory be as short as "a

few characters," it could also be gigabytes (billions of bytes) of data, as in the case of a large transaction involving Wal-Mart or a major retailer. The ACH specification is limited to 94 characters per record, where a record comprises all data regarding one financial transaction. There exists no algorithm capable of compressing billions, or even thousands, of pseudo-random bytes into one field—perhaps 12 characters—of the 94 characters available. Even if there were, all of the fields in each record are assigned to purposes aside from line item data, which is not contemplated in the specification, as Mr. Greenspan accurately described.

Nor is it possible to merely "increas[e] the transmission capacity of the ACH system," given that the ACH system is the nation's banking backbone based on a committee-run standard and is maintained by the Federal Reserve. The Board's assertion that "We are unpersuaded that one of ordinary skill at the time of the invention would have been unfamiliar with ways in which to increase transmission capacity [of the ACH network]" is therefore misplaced. As discussed above, it would not be obvious to a person skilled in the art, given the 94-character per record limitation of the ACH specification, to use line item data for financial transfers in the United States, which relies upon the ACH system for interbank payment transfers. This inherent technical limitation of the ACH system would, moreover, *discourage* a person skilled in the art from using line item data in conjunction with ACH or similar payment transfers.

The Board seems to conflate the *existence* of line item data in a merchant's point of sale system with the subsequent *transmission* of that data to a payment system capable of debiting and crediting financial accounts. As long as there have been itemized receipts, line item data has *always* existed on the merchant side. What is novel in the '808 Patent is the ability to transmit that line item data such that it is stored *in the payment system*, "the merchant location being different from the payment system." This is what claims 1 and 2 recite, since the "purchase list" is merely a multiplicity of data elements concerning itemized purchases, or line item data. *See* Ex. 1001 at claim 1; *see also id.* at claim 2. The prior art does not disclose or teach this step, i.e. transmitting a purchase list to a payment system. Dalzell is just a single-merchant (e.g. Amazon.com), single-location POS system.

The Board notes Signifo, which "'works with only four banks,'" Decision at 35, but then ignores or misapprehends Patent Owner's statement in Paper 32 that "the referenced book demonstrates that the problem is *not* fixed" because:

> The authors of the book, *Strategic Marketing in Practice*, thought they had found software ('Signifo,' now 'webexpenses') in 2007 that solves the problem central to the '808 Patent, but they did not, because Signifo does not transfer line item data. The book's Figure 4 (Ex. 2042, loc. 3859 of 6384) shows each line as a different transaction; line item data can only be manually entered with a separate, offline product shown in Figure 3 (Id., loc. 3849 of 6384). Even today, Signifo still does not offer line item data integration. (Ex. 2043 & 2044.)  Thus, the referenced software does not actually transmit or receive line item data from *any* bank.

Paper 32 at 3. For the sake of legibility, Figure 4 of Ex. 2042 is reproduced in the

attached Exhibit A. In other words, the book authors were mistaken. While their excitement at their "discovery" clearly demonstrates long-felt need, the fact that they misinterpreted the user interface of the software in question—Figure 4 does not show any received line item data at all[7], nor does Figure 3, which requires entry of data by hand—does not mean that "a solution was known as of 2007–2008." None was, and the prior art does not show a solution to that long-felt need.

Accordingly, the claim terms "purchase list," product catalog," and "transaction record" require line item data as a *necessary* limitation to all claims.

## VI.   CONCLUSION

The Board has misinterpreted the Invalidated Claims. Petitioner's view on the matter of Dalzell's lack of bi-directionality is far more in line with Patent Owner's than the Board's. Petitioner has also failed to make the required showing that it is more likely than not that any of the reviewed claims of the '808 Patent are obvious. Consequently, the Board should reconsider rendering claims 1-7, 9-11, 13-17, and 20-22 unpatentable, and deem all of these claims patentable. Or, in the alternative, Patent Owner's motion to amend should be granted.

---

[7]   The "Category" column reflects a merchant-level category, not line item data. One could purchase only 50 chocolate bars at a "Petrol" station, and still have the entire transaction confusingly labeled as "Petrol."

Dated: December 27, 2015          Respectfully Submitted,

                                  /s/ /Isaac Rabicoff/
                                  Isaac Rabicoff

# EXHIBIT A
## Transcribed from Exhibit 2042 at Figure 4

## CREDIT CARD IMPORT / [?]
[home] [log out] [add] [delete]

| Select All | Description: | Category: | Date: | Currency: | Amount: |
|---|---|---|---|---|---|
| [Check Box] | SHELL SUSSEX 342 EAST GRINSTEA | Petrol | 07-12-2002 | GBP | 53.8000 |
| [Check Box] | ESSO-BELLFIELDS S/STN GUILDFORD | Petrol | 03-12-2002 | GBP | -33.3800 |
| [Check Box] | ESSO-BELLFIELDS S/STN GUILDFORD | Petrol | 03-12-2002 | GBP | 10.0000 |
| [Check Box] | LE CAPRICE PARIS | Meals | 27-11-2002 | EUR | 125.0000 |
| [Check Box] | ESSO-BELLFIELDS S/STN GUILDFORD | Petrol | 21-11-2002 | GBP | 61.6600 |
| [Check Box] | ESSO-BELLFIELDS S/STN GUILDFORD | Petrol | 17-11-2002 | GBP | 37.8400 |
| [Check Box] | MANGO TREE LONDON | Meals | 14-11-2002 | GBP | 130.0000 |
| [Check Box] | ESSO-BELLFIELDS S/STN GUILDFORD | Petrol | 11-11-2002 | GBP | 59.4000 |

Select item(s) and then press add to add to a claim or delete to remove from the system

Tim Geddon / SIGNIFO EXPENSES / Michelin Services Limited

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to 37 C.F.R. § 42.6(e)(4), it is hereby certified that on this 28th day of December 2015, a copy of the foregoing document and exhibits was served via Electronic Mail upon the following:

Michael T. Rosato, mrosato@wsgr.com
Robin L. Brewer, rbrewer@wsgr.com

Wilson Sonsini Goodrich & Rosati
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036

/s/ /Isaac Rabicoff/
Isaac Rabicoff, Reg. No. 74,147
Counsel for Think Computer Corporation

Trials@uspto.gov                                          Paper 52
Tel: 571-272-7822                              Entered: February 9, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE PATENT TRIAL AND APPEAL BOARD

SQUARE, INC.,
Petitioner,

v.

THINK COMPUTER CORPORATION,
Patent Owner.

Case CBM2014-00159
Patent 8,396,808 B2

Before TONI R. SCHEINER, MICHAEL W. KIM, and
BART A. GERSTENBLITH, *Administrative Patent Judges.*

KIM, *Administrative Patent Judge.*

DECISION ON REQUEST FOR REHEARING
*37 C.F.R. §§ 42.5, 42.71(d)*

On December 28, 2015, Patent Owner filed a Request for Rehearing
Pursuant to 37 C.F.R. § 42.71 (Paper 51; "Req.") concerning a Final Written
Decision mailed November 27, 2015 (Paper 47; Dec.).

A request for rehearing can only point out that which the Board
misapprehended or overlooked, and will be reviewed for abuse of discretion.

CBM2014-00159
Patent 8,396,808 B2

37 C.F.R. § 42.71(d). Moreover, as the moving party, the burden of persuasion falls on Patent Owner. 37 C.F.R. § 42.20(c). The request must specifically identify all matters the party believes the Board misapprehended or overlooked, and where each matter was previously addressed in a motion, an opposition, or a reply. Office Patent Trial Practice Guide, 77 Fed. Reg. 48,756, 48,768 (Aug. 14, 2012).

> 1. *"wherein the first account and the second account are adapted to selectively function as either a merchant or a purchaser account during any particular transaction"*

Fundamentally, most of Patent Owner's assertions, on this issue but also others, are misplaced, because while Patent Owner liberally uses the phrase "misapprehend or overlook," Patent Owner actually uses the phrase predominantly as a substitute for "disagree." In doing so, Patent Owner misunderstands the purpose of requests for rehearing, and the importance of "specifically identify[ing] all matters the party believes the Board misapprehended or overlooked, *and where each matter was previously addressed in a motion, an opposition, or a reply*." Office Patent Trial Practice Guide, 77 Fed. Reg. at 48,768 (emphasis added). This guidance is particularly important for a request for rehearing of a Final Written Decision, as the trial portion of the proceeding is now closed, and neither party is allowed to enter new arguments, citations, or evidence.

In the vast majority of its assertions, Patent Owner fails to identify where the arguments, citations, or evidence were previously addressed in a substantive paper. A request for rehearing must necessarily be limited to such arguments already made, and citations and evidence already presented, because to do otherwise would be fundamentally unfair to the opposing party, in this case, the Petitioner. Specifically, due process and fairness

2

dictates that for every assertion made by one party, the opposing party must have the opportunity to rebut that assertion. That is why these trial proceedings provide very specific times and papers for which each party is allowed to make and rebut substantive assertions. Allowing one party to make assertions outside of those confines upsets that balance. To be sure, the Board is fallible, and so requests for rehearing are provided to ensure that every argument, citation, or evidence presented was properly considered in rendering a decision. Nevertheless, it is to balance this desire for completeness with the aforementioned notions of due process and fairness that, in requests for rehearing, the moving party is scrupulously limited to identifying assertions already made, and citations, or evidence previously presented in conjunction with a substantive paper where the opposing party had the opportunity to respond, especially here where the trial portion of the proceeding has concluded. When we apply this framework to most of Patent Owner's assertions, we see that Patent Owner has failed to meet both the letter and spirit of the aforementioned rules governing requests for rehearing.

For example, independent claim 1 recites "wherein the first account and the second account are adapted to selectively function as either a merchant or a purchaser account during any particular transaction," which all parties and the Board refer to as "bidirectional accounts." Dec. 11–12. Independent claims 20, 21, and 22 each recite a similar claim limitation. Patent Owner asserts that the Board misapprehended or overlooked the prosecution history of U.S. Patent No. 8,396,808 B2 ("the '808 Patent") in construing "bidirectional accounts." Req. 4–5. In making that assertion, however, Patent Owner does not identify, and we are unable to discern independently, any previous motion, opposition, or reply in which Patent

Owner argued that the prosecution history specifically informs the
construction of that term, thus failing to meet the aforementioned portion of
the Office Trial Practice Guide. Applying the above-referenced due process
framework, consideration of this assertion would not be proper. Because
this assertion was not set forth in a previous motion, opposition, or reply,
Petitioner did not have the chance to rebut this assertion, especially here,
where the trial portion of the proceeding has concluded. Accordingly, if we
were to now make a construction in favor of Patent Owner based on
assertions concerning which Petitioner did not have a chance to respond,
such a determination would be fundamentally unfair to Petitioner, and thus
cannot be allowed.

Patent Owner does identify "Paper 7 at 8, 17" (Req. 2), and may be
asserting that this identification alone forms a proper basis in a previous
motion, opposition, or reply for the aforementioned assertion. This assertion
is problematic for several reasons. As an initial matter, Paper 7 is Patent
Owner's Preliminary Response, to which Petitioner was not afforded a
chance to reply. A preliminary response is normally only a substantive
paper in that it is used to assist the Board in deciding whether or not to
institute a trial. Once the Decision on Institution (Paper 9) was made,
however, any substantive assertions Patent Owner wished the Petitioner to
consider should have been made in the proper papers following institution
and before the Final Written Decision to which Petitioner would have had a
chance to reply, in this case, the Patent Owner Response (Paper 21) (to
which Petitioner filed a Reply (Paper 30)) or Patent Owner's Motion to
Amend (Paper 20) (to which Petitioner filed an Opposition (Paper 29)). To
hold otherwise would be procedurally unfair to Petitioner, who had

CBM2014-00159
Patent 8,396,808 B2

expected, and should only have expected, to respond to substantive assertions set forth in those papers, and not in the preliminary response. *See* Scheduling Order (Paper 10) at 4 ("The patent owner is cautioned that any arguments for patentability not raised in the response will be deemed waived."). To that end, Patent Owner has not identified, and we are unable to discern independently, where Patent Owner previously made the aforementioned assertions concerning "bidirectional accounts" and the prosecution history in either the Patent Owner Response or the Patent Owner's Motion to Amend.

Setting aside the fact that Patent Owner relies upon its *Preliminary* Response, even when we consider the cited portions of the Preliminary Response, we are still unable to identify anything that could be considered a previous basis for assertions concerning "bidirectional accounts" and the prosecution history. Indeed, the entirety of Patent Owner's analysis in the cited portions of the Preliminary Response that could even remotely be interpreted as relating to a proper claim construction of "bidirectional accounts" is as follows:

> The '808 Patent also solves the technical problem of the lack of role flexibility in traditional payment systems, which for decades has complicated data retrieval tasks for countless businesses by forcing them to maintain multiple accounts and/or identities for transaction counterparts due to legacy technical design flaws. The '808 Patent solves the problem by flexibly assigning roles linked to a centralized legal entity database to create bi-directional account functionality, as opposed to using fixed roles with no bi-directionality and with no uniform entity identifiers, as in the prior art.

CBM2014-00159
Patent 8,396,808 B2

Prelim. Resp. 8.[1]  We are unclear as to how any of this analysis provides a
proper basis for Patent Owner's aforementioned assertions concerning
"bidirectional accounts" and the prosecution history.

Perhaps Patent Owner is asserting that the issue generally is
"bidirectional accounts," and since "bidirectional accounts" generally was
mentioned at the above-identified pages of the Preliminary Response, any
specific arguments, citations, and evidence made under the general rubric of
"bidirectional accounts" is proper at any time, because Petitioner should
have been on notice that "bidirectional accounts" was a contested issue to
which they should have set forth a rebuttal.  We disagree.  By that logic,
Patent Owner would have to be asserting that Petitioner, based on the
aforementioned vague reference to "bidirectional accounts" in the
Preliminary Response, should have anticipated that Patent Owner would
eventually make specific references to the portions of the prosecution history
set forth in the Request for Rehearing, and thus should have preemptively
addressed the assertions concerning "bidirectional accounts" and the
prosecution history, even before they were made.  While we are cognizant
that each party should be allowed some leeway in expanding on and
clarifying specific arguments, citations, and evidence made in previous
papers, we are unpersuaded, here, that the specific references to the portions
of the prosecution history set forth in the Request for Rehearing is merely a

---

[1] Patent Owner also cites page 17 of the Preliminary Response, however, we
have reviewed all of pages 17 to 19 of the Preliminary Response, and are
unable to identify any portion that could be considered relevant to the above
assertion.  Specifically, the only assertion made by Patent Owner is that
Dalzell and Bemmel were similar to references already considered by the
Examiner, and does not address assertions concerning "bidirectional
accounts" and the prosecution history.

reasonable expansion or clarification of the vague reference to "bidirectional accounts" set forth in the Preliminary Response. Thus, we are unpersuaded that we misapprehended or overlooked the above-cited portions of the prosecution history in construing "bidirectional accounts."

In a similar manner, Patent Owner asserts further that the Board misapprehended or overlooked certain portions of the Specification and claims of the '808 Patent in construing "bidirectional accounts." Req. 2–7. Our analysis here is the same as that set forth above with respect to "bidirectional accounts" and the prosecution history, and need not be repeated.

Although identified in a later portion of the Request for Rehearing, pages 4 to 5 of Patent Owner's Reply in Support of Motion to Amend Under 37 C.F.R. § 42.221 (Paper 32) do set forth something that could plausibly be considered a tangential assertion concerning a proper construction of "bidirectional accounts," though the analysis is in the context of why Dalzell did not disclose "bidirectional accounts."[2] Even here, however, Patent Owner does not identify any of the allegedly misapprehended or overlooked portions of the prosecution history, Specification, or claims that are purportedly relevant to a claim construction of "bidirectional accounts." Indeed, here, Patent Owner does not even mention the Specification or prosecution history at all.

For the above reasons, we are unpersuaded that the Board misapprehended or overlooked the items identified by Patent Owner in construing "bidirectional accounts."

---

[2] We note that even the assertion here was made in a Reply, to which Petitioner had a very limited chance to respond. Paper 34, 2–3.

CBM2014-00159
Patent 8,396,808 B2

Even if we were to consider some of the identified items, however, we are unpersuaded that they would alter our construction. For example, Patent Owner asserts that the claim limitation "any particular transaction" requires that "bidirectional account" be construed as allowing an account to function simultaneously as both a merchant account and a purchaser account under all transactions. We disagree, primarily because we are unclear as to what Patent Owner means by "under all transactions." The relevant limitation of independent claim 1 reads "wherein the first account and the second account are adapted to selectively function as either a merchant or a purchaser account during any particular transaction." We find that "[a]ny particular transaction" means any specific transaction, and is not necessarily limited to *all* transactions going forward, and find further that, logically, an account need only function in "merchant mode" or "purchaser mode" for that particular transaction; otherwise the account would be in the awkward position of performing a transaction with itself. Moreover, we are unclear as to why the same account cannot function as both, depending on the transaction, as an account is merely a repository within which funds are held, and whether the account is in "merchant mode" (i.e., the ability to send funds from the account) or "purchaser mode" (i.e., the ability to send funds to the account) does not alter the fundamental repository nature of the account itself.

A similar analysis of the cited portions of the prosecution history and Specification yields similar conclusions. For example, Patent Owner's discussion of the prosecution history on pages 4 and 5 of the Request for Rehearing do not amount to Patent Owner providing an explicit definition of "selectively function," "during any particular transition," or any other claim

term as meaning "simultaneously"; nor do Patent Owner's statements rise to
the level of a clear and unmistakable disclaimer with respect to the meaning
of the claim terms.

2.    *whether Dalzell fails to meet the claims' requirements*

Based on Patent Owner's proposed claim construction of
"bidirectional accounts," Patent Owner asserts that Dalzell does not disclose
"bidirectional accounts." Req. 7–10. As we are unpersuaded, however, that
the Board misapprehended or overlooked the items identified by Patent
Owner in construing "bidirectional accounts," we are unpersuaded that our
analysis of Dalzell and "bidirectional accounts" set forth on pages 28 to 29
of the Final Written Decision should be modified in any way. *See* Dec. 29
("[W]e find that a more logical reading of paragraph 59 of Dalzell is that a
buyer, from a particular account, can add a seller feature to that particular
account, without the need to create a whole new account. Such a finding is
supported by extensive analysis and testimony by Dr. Sadeh-Koniecpol, with
explicit citations to Dalzell, which we find credible, reasonable, and
persuasive. Ex. 1002 ¶¶ 147-164 (citing Ex. 1006 ¶¶ 9, 27, 49, 57, 61, 82,
85, 87, 132, 163, Figs. 1A, 1B).")

3.    *"line item data" and "line item transaction data"*

Patent Owner asserts that the Board misconstrues "line item data" and
"line item transaction data" (hereinafter "line item data"). Req. 10–15.
Similar to the assertions set forth above with respect to "bidirectional
accounts," we note that many of Patent Owner's assertions concerning this
issue are set forth for the first time in the Request for Rehearing, without
Patent Owner identifying, or the Board being able to ascertain
independently, where those assertions were first made in a previous motion,

CBM2014-00159
Patent 8,396,808 B2

opposition, or reply. Accordingly, those assertions have not been considered for the same reasons as set forth *supra* concerning "bidirectional accounts." Instead, we address below only those assertions that have a proper basis in a previous motion, opposition, or reply.

Patent Owner asserts that a proper construction of each of the recited claim limitations "purchase list," product catalog," and "transaction record" requires "line item data" as a necessary limitation to all claims, and that the Board misapprehended and overlooked two things in determining otherwise. We disagree.

First, Patent Owner asserts that the Board's determination that "purchase list" does not require "line item data" is unreasonably broad, because the Board overlooked or misapprehended the fact that the Specification does not provide a basis for the Board's unreasonably broad construction. We disagree. As set forth on page 7 of the Final Written Decision, the Board considered expressly the Specification as a basis for its construction. To the extent that Patent Owner disagrees with how the Board used the Specification in making the aforementioned construction, the Board has considered anew the disclosures in the Specification identified by Patent Owner concerning whether "purchase list" requires "line item data," and are again unpersuaded our construction is in error.[3]

Second, Patent Owner asserts that the Board's determination that "purchase list" does not require "line item data" is unreasonably broad, because the Board overlooked or misapprehended the fact that *In re Van*

---

[3] Indeed, Patent Owner's "fruit orchard" analogy supports the Board's construction, as a fruit orchard, at times, may not include any fruit, for example, and merely consist of soil and trees.

10

*Geuns*, 988 F.2d 1181, 1184 (Fed. Cir. 1993), can be distinguished from the instant proceeding. Specifically, Patent Owner asserts that "there is no alternative construction posited as was true in *In re Van Geuns*, and 'line item data' is not a familiar natural principle, in the way that a magnetic field is." Req. 11. We disagree. Concerning whether or not there was an alternative construction posited in *In re Van Geuns*, the question in that case was whether a claim limitation concerning "substantially uniform magnetic field" should be construed as "substantially uniform magnetic field *required for NMR imaging*" (emphasis added). Thus, contrary to Patent Owner's assertions, there were two alternative constructions posited, one broader and one narrower, and the broader one was determined to be correct. Such is the exact fact scenario here concerning "purchase list" and "line item data."

Concerning the fact that "line item data" is not a familiar natural principle, we agree with Patent Owner. We are unclear as to how that agreement, however, helps Patent Owner's position, as if "line item data" is not as certain as a familiar natural principle, the ambiguity should be construed against Patent Owner. Specifically, if there is greater doubt as to whether or not "purchase list" requires "line item data" because the meaning of "line item data" is uncertain, the broader construction should be used, i.e., that "purchase list" does not require "line item data."

Patent Owner appears to assert additionally that the Board misapprehended or overlooked the fact that a proper construction, presumably of the independent claims, requires that in order for a prior art reference to meet the claimed system and method, the prior art must be capable of handling *all types* of "line item data," including "line item data" that includes gigabytes of data. We disagree that this assertion was

11

misapprehended or overlooked, as Patent Owner has not identified where these assertions are set forth in any previous motion, opposition, or reply.[4]

Patent Owner asserts additionally that the Board has misapprehended or overlooked Patent Owner's characterizations of Exhibit 2042. The Board did not misapprehend or overlook Patent Owner's characterizations of Exhibit 2042; the Board disagreed with it. Indeed, page 36 of the Final Written Decision block quotes and addresses the exact assertions that Patent Owner asserts was misapprehended or overlooked.

Patent Owner asserts also that the Board has misapprehended or overlooked the fact that the items set forth in Figure 4 of Exhibit 2042 are not "line item data." We construed "line item data" as "information from a larger group of information, related to individual products involved in a purchase or sale, that is capable of categorization." Dec. 11. We are unpersuaded that at least one of the items set forth in Figure 4 of Exhibit 2042, such as any item listed under Description, Category, Date, Currency, and Amount, does not meet the above construction of "line item data."

IT IS ORDERED that insofar as we have addressed above the assertions set forth in Patent Owner's Request for Rehearing (Paper 51), the Request is *granted*. In all other respects, the Request is *denied*.

---

[4] Absent such a narrowing of the independent claims, and it is unclear which claim limitation would serve the basis for such a narrowing, Patent Owner's proffered analogy again supports the Board's construction, as a doorframe built for "humans" is met if the prior art discloses a doorframe that can accommodate a short child, but not Manute Bol.

CBM2014-00159
Patent 8,396,808 B2

For PETITIONER:

Michael T. Rosato
Robin L. Brewer
WILSON SONSINI GOODRICH & ROSATI, P.C.
mrosato@wsgr.com
rbrewer@wsgr.com


For PATENT OWNER:

Issac Rabicoff
RABICOFF LAW LLC
isaac@rabilaw.com

Michael Aschenbrener
ASCHENBRENER LAW, P.C.
mja@aschenbrenerlaw.com

Filed on behalf of Think Computer Corporation
By:   Isaac Rabicoff (isaac@rabilaw.com)
       Rabicoff Law LLC
       73 W Monroe St
       Chicago, IL 60603
       Tel: (773) 669-4590

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE PATENT TRIAL AND APPEAL BOARD

SQUARE, INC.
Petitioner

v.

THINK COMPUTER CORPORATION
Patent Owner

Case No.: CBM2014-00159
Patent 8,396,808

**PATENT OWNER THINK COMPUTER CORPORATION'S
NOTICE OF APPEAL**

**Director of the United States Patent and Trademark Office**
**c/o Office of the General Counsel**
**United States Patent and Trademark Office**
**P.O. Box 1450 Alexandria, VA 22313-1450**

Notice is hereby given, pursuant to 37 § C.F.R. 90.2(a), that Patent Owner

Think Computer Corporation ("Think") hereby appeals to the United States Court

of Appeals for the Federal Circuit from the Decision on Request for Rehearing

entered on February 9, 2016 (Paper 52) (the "Rehearing Decision"), and from all

underlying orders, decisions, rulings and opinions, including without limitation the

Final Written Decision entered on November 27, 2015 (Paper 47).

In accordance with 37 § C.F.R. 90.2(a)(3)(ii), Patent Owner further indicates

that the issues on appeal include, but are not limited to, the Patent Trial and Appeal

Board's application and use of the broadest reasonable interpretation standard,

claim construction, determination of unpatentability of claims 1-7, 9-11, 13-17,

and 20-22 of Think's U.S. Patent Number 8,396,808 ("'808 Patent") under 35

U.S.C. § 103, denial of Think's motion to amend the claims of the '808 Patent,

denial of Think's request to file a motion for sanctions against Petitioner,

Petitioner's reliance on unsupported or otherwise improper expert testimony, and

any finding or determination supporting or related to those issues, as well as all

other issues decided adversely to Patent Owner in any orders, decisions, rulings

and opinions.

Simultaneous with this submission, a copy of this Notice of Appeal is being filed with the Patent Trial and Appeal Board and the Clerk's Office for the United States Court of Appeals for the Federal Circuit.

Date: <u>April 7, 2016</u>

Respectfully submitted,

*Isaac Rabicoff*

Isaac Rabicoff
Rabicoff Law LLC
73 W Monroe St
Chicago, IL 60603
(773) 669-4590

Counsel for Patent Owner
Think Computer Corporation

## CERTIFICATE OF SERVICE

I hereby certify that, in addition to being filed electronically through the Patent Trial and Appeal Board's Patent Review Processing System (PRPS), the original version of the foregoing, PATENT OWNER THINK COMPUTER CORPORATION'S NOTICE OF APPEAL, was mailed via Express Mail on this 7th day of April, 2016, to the Director of the United States Patent and Trademark Office, at the following address:

Director of the United States Patent and Trademark Office
c/o Office of the General Counsel
United States Patent and Trademark Office
P.O. Box 1450 Alexandria, VA 22313-1450

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing, PATENT OWNER THINK COMPUTER CORPORATION'S NOTICE OF APPEAL, was filed electronically on this 7th day of April, 2016, with the Clerk's Office of the United States Court of Appeals for the Federal Circuit:

> United States Court of Appeals for the Federal Circuit
> 717 Madison Place, N.W., Suite 401
> Washington, DC 20005

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing, PATENT OWNER THINK COMPUTER CORPORATION'S NOTICE OF APPEAL, was served, in accordance with the parties' electronic service agreement, by electronic mail on this 7th day of April, 2016, on the following counsel of record for Petitioner Square, Inc.

> Michael T. Rosato, mrosato@wsgr.com
> Robin L. Brewer, rbrewer@wsgr.com
>
> Wilson Sonsini Goodrich & Rosati
> 701 Fifth Avenue, Suite 5100
> Seattle, WA 98104-7036

Date: <u>April 7, 2016</u>                    Respectfully submitted,

*Isaac Rabicoff*

Isaac Rabicoff
Rabicoff Law LLC
73 W Monroe St
Chicago, IL 60603
(773) 669-4590

Counsel for Patent Owner
Think Computer Corporation