No. 2016-1818

_____

United States Court of Appeals
**FOR THE FEDERAL CIRCUIT**

_____

THINK COMPUTER CORPORATION,

Appellant,

v.

SQUARE, INC.,

Appellee.

_____

Appeal from the United States Patent and Trademark Office
Patent Trial and Appeal Board, No. CBM2014-00159
Patent 8,396,808

_____

**APPELLEE'S CORRECTED ANSWERING BRIEF**

_____

Michael T. Rosato
WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue
Suite 5100
Seattle, WA  98104-7036
Tel.:  (206) 883-2529

Robin L. Brewer
Eugene Marder
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Tel.: (415) 947-2000

Attorneys for Appellee
SQUARE, INC.

## CERTIFICATE OF INTEREST

Counsel for the Petitioner-Appellee certifies the following:

1.      The full name of every party represented by the undersigned counsel in this case is:  Square, Inc.

2.      Square, Inc. is the name of the real party in interest.

3.      Square, Inc. has no parent company, and no publicly held corporation owns 10% or more of Square, Inc.'s stock.

4.      The names of all law firms and the partners and associates that have appeared for Square, Inc. in the United States Patent and Trademark Office or are expected to appear for Square, Inc. in this Court and who are not already listed on the docket for the current case:

None.

Date: December 16, 2016                 Respectfully submitted,

By    */s/ Michael T. Rosato*
      Michael T. Rosato

      Attorneys for Petitioner-Appellee
      SQUARE, INC.

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES .................................................. IX

STATEMENT OF THE ISSUES............................................................ 1

INTRODUCTION ............................................................................... 1

STATEMENT OF THE CASE............................................................... 6

STATEMENT OF THE FACTS ............................................................ 6

    A.    The '808 Patent and Patent File History ............................. 6

    B.    Bidirectional Accounts Were Known in the Art. ................. 9

    C.    The CBM Proceedings ..................................................... 15

        1.    Square's construction of the bidirectional accounts limitation was never challenged and Square demonstrated that bidirectional accounts were known in the art in its petition. ................................................................. 15

        2.    Think Computer never challenged Square's showing that bidirectional accounts were known in the art in its opposition briefing. ................................................. 17

        3.    Think Computer never mentioned bidirectional accounts in its motion to amend.............................................. 18

        4.    Square's reply and opposition to the motion to amend focused on line item data. ......................................... 20

        5.    Think Computer raised the bidirectional accounts limitation for the first time in its reply to the motion to amend. ....................................................................... 20

        6.    The Board rejected Think Computer's argument that the claims prohibit extra steps and found that Dalzell disclosed the bidirectional accounts limitation. ......................... 23

        7.    Think Computer raised a new argument for the bidirectional accounts limitation in its request for rehearing.................................................................. 26

        8.    The Board rejected Think Computer's arguments as both untimely and failing on the merits. ......................... 28

D.    Think Computer's Brief Introduces Yet Another New Argument. ........................................................................... 30

SUMMARY OF THE ARGUMENT ..................................................... 31

ARGUMENT ...................................................................................... 33

I.    STANDARD OF REVIEW ....................................................... 33

II.    THINK COMPUTER'S ARGUMENT THAT IT DISCLAIMED USER SELECTION IS NEW ARGUMENT AND SHOULD NOT BE CONSIDERED ...................................................................... 34

A.    Think Computer Never Raised its "User Selection" Argument to the Board or Otherwise Challenged Square's Proffered Claim Construction. ..................................................................... 34

B.    This Court Should Not Consider Think Computer's Untimely Claim Construction Argument. ............................................ 39

III.    THE BIDIRECTIONAL ACCOUNTS LIMITATION REQUIRES NOTHING MORE THAN AN ACCOUNT THAT HAS A PURCHASER MODE AND A MERCHANT MODE ................................ 42

A.    The Board Correctly Found That the Bidirectional Accounts Limitation Requires a Single Account to Have a Purchaser Mode and a Merchant Mode. .............................................. 42

B.    The Specification Supports the Board's Construction. ...................... 45

C.    There Has Been No Disavowal of User Selection. ........................... 47

1.    The doctrine of prosecution history disclaimer does not apply here. .................................................................... 47

2.    Think Computer did not clearly and unmistakably disavow "user selection of account roles." ............................. 49

IV.    THE BOARD CORRECTLY CONCLUDED THAT DALZELL MEETS THE BIDIRECTIONAL ACCOUNTS LIMITATION ................. 52

A.    The Board's Decision that Dalzell Discloses the Bidirectional Accounts Limitation Is Supported by Substantial Evidence .............. 52

B.    Think Computer's Argument That the Board Failed to Engage in Critical Fact Findings Is Belied by the Record. ............................. 55

1.     The Board's determination relies on explicit disclosures in Dalzell. ................................................................. 56

2.     Think Computer's implication that the Board relied exclusively on paragraph 59 mischaracterizes the Board's decision. ............................................................................ 58

C.     Dalzell Meets the Bidirectional Accounts Limitation Even Under Think Computer's Proposed Claim Construction. .................. 59

CONCLUSION ................................................................................. 60

# TABLE OF AUTHORITIES

## CASES

*Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547 (Fed. Cir. 1989) ...................................................................................57, 58

*Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938) .................................34

*Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352 (Fed. Cir. 2003) ............50, 51

*CSS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359 (Fed. Cir. 2002)...........41, 42

*Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. __, slip op. (2016) ............................48

*Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352 (Fed. Cir. 2004) .......................40

*Enovsys LLC v. Nextel Communications, Inc.*, 614 F.3d 1333 (2010)....................40

*Geo. M. Martin Co. v. All. Mach. Sys. Int'l LLC*, 618 F.3d 1294 (Fed. Cir. 2010)...................................................................................57

*Graham v. John Deere Co. of Kansas City,* 383 U.S. 1 (1966)..............................33

*HTC Corp. v. IPCom Gmbh*, 667 F.3d 1270 (Fed. Cir. Jan. 30, 2012) .............39, 40

*In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268 (Fed. Cir. 2015), *cert. granted sub nom.*, *Cuozzo Speed Techs., LLC v. Lee*, No. 15-446, ___ U.S. ___, 136 S.Ct. 890, 2016 WL 205946 (Jan. 15, 2015) .........................................................................................33

*In re Gartside*, 203 F.3d 1305 (Fed. Cir. 2000).....................................................34

*In re Oelrich*, 666 F.2d 578 (CCPA 1981) .............................................................58

*In Re Rijckaert*, 9 F.3d 1531 (Fed. Cir. 1993) .......................................................58

*In re Warsaw Orthopedic, Inc.,* 832 F.3d 1327 (Fed. Cir. 2016) ...........................41

*Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359 (Fed. Cir. May 9, 2016) .........................................................................39

*Intertainer, Inc. v. Hulu, LLC*, No. 2015-2065, 2016 WL 5361513 (Fed. Cir. Sept. 26, 2016) .............................................................................42

*KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. 398 (2007) ...............................................33

*Microsoft Corporation v. Proxyconn, Inc.*, 789 F.3d 1292 (Fed. Cir. 2015)...................................................................................47

*Randall Mfg. v. Rea,* 733 F.3d 1355 (Fed. Cir. 2013) ............................................33

*SanDisk Corp. v. Memorex Prod., Inc.*, 415 F.3d 1278 (Fed. Cir. 2005) ...................................................................................50

*SAS Inst., Inc. v. ComplementSoft, LLC.*, 825 F.3d 1341 (Fed. Cir. 2016) ...................................................................................49

*Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*, 806 F.3d 1356 (Fed. Cir. 2015) ...........................................................40, 41

*Tempo Lighting, Inc. v. Tivoli, LLC*, 742 F.3d 973 (Fed. Cir. 2014) ...............46, 48

*Trivascular, Inc. v. Samuels*, 812 F.3d 1056 (Fed. Cir. 2016) ...............................52

*Unwired Planet, LLC v. Google Inc.*, Case Nos. 2015-1810, -1811, slip op. (Fed. Cir. Nov. 15, 2016)........................................................57

## STATUTES

35 U.S.C. § 103 ..............................................................6, 33, 56

## RULES

37 C.F.R. § 42.23(b) ......................................................................36

37 C.F.R. § 42.71(d) ......................................................................28

37 C.F.R. § 42.207 .........................................................................14

37 C.F.R. § 42.220 .........................................................................14

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| Square, Inc. | Square |
| Think Computer Corporation | Think Computer or Appellant |
| U.S. Patent No. 8,396,808 | the '808 patent |
| Covered Business Method Review | CBM review |
| Patent Trial and Appeal Board | PTAB or Board |
| United States Patent and Trademark Office | PTO or Patent Office |
| CBM2014-00159 | the CBM Review |
| *Inter Partes* review | IPR |
| Brief of Appellant Think Computer Corporation, Document No. 20 | Brief or Br. |
| U.S. Patent Pub. No. 2003/0204447 to Dalzell, published October 30, 2005 | Dalzell |
| U.S. Patent Pub. No. 2008/0046366 to Bemmel, published February 21, 2008 | Bemmel |
| U.S. Patent Publication No. 2007/0255652 A1 to John Tumminaro et al. | Tumminaro |
| U.S. Patent Publication No. 2008/0177624 A9 to Ryan W. Dohse | Dohse |

## STATEMENT OF RELATED CASES

Square certifies that no appeal in or from the same proceeding in the Patent Office is currently pending or was previously before this or any other appellate court.   This Court's decision in this appeal can affect the following ongoing litigation, in which the '808 patent is asserted: *Think Computer Corporation v. Square, Inc.*, No. 5:14-cv-01374 (N.D. Cal.).

## STATEMENT OF THE ISSUES

1.    Whether Think Computer may raise the argument that it disclaimed a user assigning a merchant or purchaser role to an account, which was never timely raised before the Board, for the first time on appeal.

2.    If such an argument is considered, whether a negative limitation not supported by the intrinsic evidence should be imported into the "bidirectional accounts" limitation, based on a single irrelevant statement during prosecution.

3.    Whether substantial evidence supports the Board's findings that the prior art, as illustrated by Dalzell, discloses an account that functions to both sell goods and purchase goods, as required by the plain language of the claims.

## INTRODUCTION

Should this Court entertain Think Computer's untimely theory on the so-called "bidirectional accounts limitation," the argument can soundly be rejected on the merits.[1] The bidirectional accounts limitation is broadly recited in the patent

---

[1]  For convenience, the parties have shorthanded the first limitation of the independent claims and refer to it either as the "bidirectional accounts limitation" or "bi-directional account element." *See* Br. at 12.  The entirety of the limitation is: "assigning a role of a merchant account to a first account and a role of a purchaser account to a second account within a payment system wherein the first

(continued...)

claims as involving an account that can be used in a transaction as merchant/seller to receive money or a purchaser to send money.  Think Computer never timely raised any argument regarding the bidirectional accounts limitation, claim construction or otherwise, in the CBM proceeding.

Square's petition originally discussed the proper and reasonable construction of this claim limitation and mapped the claim limitation to multiple prior art references—neither of which was ever contested by Think Computer in its opposition case.  Instead, Think Computer's opposition case focused entirely on a different issue—claim language purportedly incorporating "line item data." Separate from its opposition to the unpatentability case advanced in the petition, Think Computer filed a motion to amend that, consistent with its opposition briefing, focused entirely on a "line item data."  As moving party in its motion to amend, Think Computer bore the burden of explaining patentability of the newly amended claims over the prior art, but the motion never contested that the bidirectional accounts limitation was known in the prior art at the relevant time.

_____

(...continued from previous page)

account and the second account are adapted to selectively function as either a merchant account or a purchaser account during any particular transaction."  The shorthand relates to the claimed functionality rather than a specific phrase found in the claim language.

Think Computer waited until the last brief was filed in the CBM Review, its reply to the motion to amend, to advance the argument that one prior art reference, Dalzell, failed to disclose the bidirectional accounts limitation on the basis that Dalzell required "extra steps" in the operation of Dalzell's bidirectional accounts. Appx2373-2374. Not only was this argument not relevant to the motion to amend, which related to line item data, it was made after all of Square's briefing was complete.

Nonetheless, this argument was fully considered and soundly rejected by the Board in the final written decision. Think Computer's arguments were disconnected from the broad language of the challenged claims, and the Board correctly found that Dalzell disclosed the bidirectional accounts limitation.

Think Computer next filed its request for rehearing, making a new argument relating to "bidirectional accounts" and including additional qualifications it hoped would distinguish from the bidirectional accounts disclosed in the Dalzell reference. According to Think Computer, an account that has both a bank account for receipt of funds and a credit card for payment did not meet the bidirectional accounts limitations because neither of those payment means alone "function in both directions." Appx2562-2563. Think Computer referenced the file history, but did not argue disclaimer.

Despite finding that Think Computer had failed to previously raise its claim

construction argument and it was, therefore, improper for a request for rehearing, the Board addressed Think Computer's arguments on the merits. The Board rejected each of Think Computer's contentions, finding that the new arguments did not alter the Board's finding in the final written decision and that the statements in the prosecution history did not "rise to the level of a clear and unmistakable disclaimer."

Think Computer now advances a new "bidirectional accounts" argument here on appeal that is similarly without merit. While the claims broadly recite the accounts "are adapted to selectively function as either a merchant account or a purchaser account," Think Computer seeks to import various qualifications as to how that functionality may or may not be achieved. Think Computer now argues the *ex parte* examination record should be read as having disclaimed "user selection," but imported machine or computer selection, as a basis for exercising bidirectional functionality of an account.

Think Computer's arguments can be rejected on the merits, and this court should affirm the Board's findings below. The bidirectional accounts limitation, which requires nothing more than an account that has both merchant/seller and purchaser functionality, represents subject matter well known in the art at the time—as illustrated by the Dalzell reference, correctly found by the Board, and supported by substantial evidence. The '808 patent claims recite no qualification,

and the specification includes no discussion, as to how the role of either merchant or purchaser is assigned.  And applicant did not effectively re-write its claims through the prosecution history so as to import machine actions, while clearly and unmistakably disclaiming user selection.  At most, the identified *ex parte* prosecution statement stands for the more sensible, if less impactful, proposition that the account, rather than a human person alone, has to have the ability to function as both merchant and purchaser.

Correspondingly, the Board's finding that Dalzell discloses a bidirectional account as recited in the challenged claims is supported by substantial evidence. Dalzell discloses an account that has both a merchant and a purchaser mode. Dalzell teaches that an account stores information for both payment and receipt of payment.  Dalzell further teaches a system that allows users to flexibly buy or sell items from the same user account.  In sum, Dalzell, like other prior art references presented in the petition materials, discloses the same functionality Think Computer ascribes to the '808 patent—an account "capable of adaptively functioning in either a merchant or purchaser role for any particular transaction, without requiring a duplicate account for the opposite role."  Br. at 11. Accordingly, the Board correctly found claims 1-7, 9-11, 13-17, and 20-22 unpatentable and should be affirmed.

## STATEMENT OF THE CASE

Think Computer filed suit against Square in the Northern District of California on March 25, 2014, alleging infringement of the '808 patent. Square filed a petition for CBM review and the parties stipulated to stay the district court case.

This appeal concerns the Board's Final Written Decision in the CBM Review, finding that claims 1-7, 9-11, 13-17, and 20-22 of the '808 patent are unpatentable as obvious under 35 U.S.C. § 103(a).

## STATEMENT OF THE FACTS

### A.     The '808 Patent and Patent File History

The '808 patent is directed to an electronic payment system. *See, e.g.*, Appx67, claim 1. Specifically, the independent claims are directed to a transaction flow for electronic payments including: (1) the payment system assigns the user accounts to their individual roles as merchant and purchaser; (2) an item is added from the merchant's product catalog to a purchase list; (3) the merchant terminal sends the purchaser's user ID token to the payment system; (4) the payment system returns identity confirmation information to the merchant terminal; and (5) the payment system transfers funds from the purchaser account to the merchant account. *See, e.g.*, Appx171-172. Claim 1 is illustrative:

> A method for transferring an electronic payment between a purchaser and a merchant comprising:

> *assigning a role of a merchant account to a first account and a role of a purchaser account to a second account within a payment system wherein the first account and the second account are adapted to selectively function as either a merchant account or a purchaser account during any particular transaction;*
>
> adding an item offered for sale by the merchant from a product catalog stored in the payment system to a purchase list;
>
> obtaining a user ID token of the purchaser from a merchant terminal, the merchant terminal being at a merchant location and the merchant location being different from the payment system;
>
> communicating identity confirmation information associated with the user ID token to the merchant terminal; and
>
> transferring funds for a purchase price total from the purchaser account to the merchant account.

The remaining independent claims subject to this appeal, claims 20-22, are substantially similar. Appx68.

Think Computer's appeal focuses on a single feature of the larger system—the bidirectional accounts feature. Br. at 19-21. This feature is reflected in the first limitation of claim 1.

The '808 patent specification describes bidirectional accounts as "accounts of the payment system [that] are preferably designed so that an account may selectively function as either a merchant or a purchaser during any particular transaction. In other words, within the scope of all transactions, accounts of the payment system can function as bi-directional transaction accounts." Appx64 at 3:17-21. The process of allowing a user account to assume the role of purchaser or merchant is further illustrated in Figure 1 of the '808 patent at step S110. Appx54.



Figure 1

As the specification describes, the "payment system 210 preferably includes a plurality of payment system accounts stored in a connected account database 212. The payment system accounts preferably can act as merchant accounts or purchaser accounts as described above." Appx66 at 8:49-53.

The bidirectional accounts limitation was added in response to an examiner's rejection. Appx534-550. The applicant explained that "accounts within the payment system are adapted to selectively function as either a merchant account or a purchaser account during any particular transaction." Appx526; *see also* Appx515-527. The examiner did not find this amendment persuasive and

again rejected the claims.  Appx457-481.

In response, the applicant primarily argued that the prior art did not disclose a product catalog stored in a payment system at a location different from the merchant location.  *See* Appx334-339.  As a secondary argument, the applicant argued that the examiner had failed to demonstrate that Wong, inherently or implicitly, disclosed the bidirectional accounts limitation, which was not cured by Zhang.  Appx339-340.  According to the applicant, Zhang "[a]t most [] discloses that a *person* can assume these different roles, however, this does not teach that an *account within a payment system* is adapted to selectively function as either a merchant account or a purchaser account during any particular transaction."  Appx340 (emphasis in original).

The Examiner issued a Notice of Allowability, finding that "there is nothing in this particular art (e.g., e-commerce transaction payment and e-commerce transaction authorization art) that describes the limitation of: 'adding an item offered for sale by the merchant from a product catalog stored in the payment system to a purchase list' that can be properly combined with Wong to read on this claim."  Appx294; *see also* Appx291-299.

## B.    Bidirectional Accounts Were Known in the Art.

As shown by multiple references, bidirectional accounts were known in the art.  In the petition, Square specifically discussed two references: Dalzell and

Tumminaro.    Think  Computer  never  challenged  Square's  showing  that

bidirectional accounts were known in the art in the CBM proceeding.

Specifically, Dalzell discloses "electronic marketplaces through which users

buy  and  sell  items  over  a  computer  network."    Appx870;  Appx183;  Appx16.

Figure 5A illustrates the components of the "electronic marketplace" disclosed in

Dalzell:



FIG. 5A

Appx861.

Dalzell's  marketplace  uses  the  same  components  claimed  in  the  '808

patent—merchant  and  purchaser  terminals,  and  a  payment  system.  *See, e.g.*,

Appx870  at  [0002],  [0009];  Appx872-873  at  [0045];  Appx879-880  at  [0121]-

[0122];  Appx184-185.   This marketplace allows and encourages user accounts to

function  as  either  a  purchaser  or  merchant  in  any  given  transaction.   *See* Appx194-

198.  Dalzell discloses:

> An important aspect of the embodiment depicted in FIGS. 1A and 1B is that the option to sell a unit of an item within the marketplace is displayed in conjunction with (e.g., on the same product detail page as) an option to buy a unit of that item. Thus, users who access the catalog for purposes of making purchases are exposed to the process by which they may list items for sale. As a result of such exposure, users are more likely to become marketplace sellers. Another benefit is that users can use the same catalog search and navigation tools for both buying and selling products.

*See* Appx876 at [0087]; *see also* Appx850-851; Appx873 at [0049]; Appx874 at [0057], [0061].  According to Dalzell, users of the marketplace have the option of either purchasing or selling the listed item.  *Id.*  Further, Dalzell does not require switching accounts to engage in either purchasing or selling.  *Id.*

To facilitate this bidirectional functionality, the system disclosed in Dalzell stores both purchaser and merchant information for each user account: "For each user, [stored] information may include, for example, a name, password, shipping address, e-mail address, *payment information*, *bank account information* (particularly for sellers who have elected to have sales proceeds deposited into their bank accounts), wish list contents, preference settings, and a purchase history." Appx880-881 at [0132] (emphasis added); Appx194.  In sum, a user account stores both payment information and bank account information, enabling users to both buy and sell goods in the electronic marketplace through the same user account. *See id.*; *see also* Appx194-197; Appx874 at [0061]; Appx876 at [0081]; [0085], [0087]; Appx27-28.

Dalzell further teaches assigning the role of either merchant or purchaser to an account.  Appx195-197.  Figure 1A "illustrates an exemplary product detail page showing marketplace product listings."  Appx872 at [0027].



FIG. 1A

The marketplace listing contains "the provider tag 115 [that] allows a user to immediately purchase a product . . . from the provider seller; or add the product to a personal shopping cart for subsequent purchase."  Appx876 at [0081].  Where the user hits "add to shopping cart," the user's account is assigned the role of purchaser account.  Appx197.  That account is now able to send money to the merchant.  *Id.*  Similarly, the marketplace listing "also includes a 'sell yours here'

button 127 for allowing a user to create a marketplace listing for the product."
Appx876 at [0085].  Where the user hits "sell yours here," the user's account is
assigned the role of the merchant account.  Appx197.  That account is now able to
receive money from a purchaser.  *Id.*  Based on the user's actions, the system
assigns either a purchaser role or a merchant role to the account for a given
transaction.  Appx196-197  The account may then take on the inverse role in a
different transaction.  *Id.*

Similarly, Tumminaro discloses "[a] mobile payment platform and service
[that] provides a fast, easy way to make payments by users of mobile devices."
Appx1044-1045 at [0021]; *see also* Appx965.  Tumminaro further discloses user
mobile devices ("purchaser terminal"), POS terminals ("merchant terminal"), and a
payment platform and service ("payment system").  *See, e.g.*, Appx1044-1045 at
[0021], Appx1074-1075 at [0444].  Tumminaro allows any user to "access the
mobile client application to send money or request money from anyone."
Appx1092 at [0692]; *see* Appx242-243.  "The mobile client application [of
Tumminaro] supports the following features:  *Pay*, Balance, History, *Request Pay*,
Refer or Invite, Add Money (*i.e.*, Load), Settings, Help.  MCA [Mobile Client
Application] can be used to *send money* from an account holder's account to any
mobile subscriber whose device supports text messaging."  Appx1092 at [0693]
(emphasis added).  In other words, users can use the accounts in Tumminaro to

both make and receive payments.  Appx242.

Tumminaro further discloses that at the outset of each transaction, once a user selects whether to send or receive money, the user becomes either a payer (purchaser) or payee (merchant).  If the account holder is the payer, the invention of Tumminaro will guide the user through the transaction using payer-specific steps.  Appx1092-1093 at [0694]-[0725].  Similarly, if the account holder is the payee, the invention of Tumminaro will guide the user through the transaction using payee-specific steps, including receiving payment.  Appx1093 at [0726]-[0742].  Tumminaro, therefore, also discloses assigning merchant and purchaser roles to accounts.  Appx243.

As discussed in the next section, Square's showings were unchallenged in the CBM proceeding.  The rules require a patent owner to raise any reasons a CBM review should not be instituted and address any ground for unpatentability in the patent owner preliminary response and patent owner response.  *See, e.g.*, 37 C.F.R. §§ 42.207, 42.220.  In its preliminary response and response, Think Computer never challenged that Dalzell and Tumminaro disclose bidirectional accounts.  In fact the only mention of bidirectional accounts related to *ex parte* prosecution.  Even in the motion to amend, where Think Computer bears the burden of showing patentability, Think Computer made no mention of the bidirectional accounts limitation as a basis for patentability or distinction over the prior art.  Appx1767-

1781. Throughout the proceeding, it was therefore undisputed that the prior art discloses the bidirectional accounts limitation.

## C. The CBM Proceedings

### 1. Square's construction of the bidirectional accounts limitation was never challenged and Square demonstrated that bidirectional accounts were known in the art in its petition.

Square specifically raised the bidirectional accounts limitation in its petition, and discussed it in the context of the proper construction of the terms "(role of a) merchant account / (role of a purchaser) account." *See* Appx95-97. Square explained that the specification describes a single account that has a purchaser mode and a merchant mode:

> The specification and prosecution history make clear that, under the claimed methods and systems, a single account can perform the functions of either receiving or sending money, depending on the particular transaction. *See, e.g.*, Ex. 1001 at 3:4-8 ("Step S110, which includes assigning a role of a merchant account to a first account and a role of a purchaser account to a second account within a payment system, functions to register a purchaser and a merchant for a transaction within a single integrated system."); *id.* at 3:20-22 ("In other words, within the scope of all transactions, accounts of the payment system can function as bi-directional transaction accounts."); *see* Ex. 1002 at ¶ 40.

Appx96. Square also commented that the applicant's statements during *ex parte* prosecution further clarified that the account has to be able to assume the role of either merchant or purchaser:

In distinguishing from a prior art reference cited by the examiner during prosecution, the applicant further clarified that while the reference "discloses that a *person* can assume these different roles, … this does not teach that an *account* within a payment system is adapted to selectively function as either a merchant account or a purchaser account during any particular transaction." Ex. 1004 at 58 (Response to Office Action mailed on Oct. 24, 2012, at 14) (emphasis added). Accordingly, the alleged distinguishing feature of the claimed invention is that a user account (rather than a human person) can assume or function as either role.

Appx96.

With respect to assigning either the merchant or purchaser role to the account, Square commented that:

Notably, the claims say that these roles are "assign[ed]" by the claimed system. The specification does not define what constitutes assigning or prescribe any particular method of assigning a role. Given the disclosure in the '808 patent, "assigning" is best understood as allowing a single user account to take on the role of a recipient of payment or remitter of payment, depending on the transaction.

Appx96-97. Square concluded by suggesting that "[i]n light of the '808 patent specification, a person of ordinary skill in the art would therefore understand the terms 'merchant account' and 'purchaser account' to mean 'an account able to receive payment' and 'an account able to send payment,' respectively." Appx97. Think Computer never challenged Square's construction.

Square further demonstrated that bidirectional accounts were known in the art, including as disclosed by Dalzell and Tumminaro. Appx101-105; Appx134-137; Appx194-197; Appx242-243. As discussed above, Dalzell discloses a

marketplace with user accounts that can be used to buy or sell goods and Tumminaro discloses a mobile payment platform that allows users to send or receive payments.

> ### 2. Think Computer never challenged Square's showing that bidirectional accounts were known in the art in its opposition briefing.

Think Computer argued in its opposition briefing that line item data was a primary focus of the '808 patent. *See, e.g.*, Appx1786 ("Greenspan conceived of the invention claimed in the '808 Patent while operating Think when he became frustrated at the inability to automate accounting tasks due to the complete lack of line item transaction data offered by financial institutions."); Appx1958 ("[T]he primary challenge I encountered when balancing Think's books and preparing tax returns was the inability to automate tasks due to the complete lack of line item data offered by financial institutions."); Appx1962-1963 ("Ultimately . . . I decided that it would not be possible to automate line item acquisition and categorization without building a new and more modern payment system, which also provided any opportunity for updating anti-fraud protections. The '808 patent was and is based on my insights in these domains."); Appx1312-1313.

Consistent with this view, the only claim construction argument Think Computer made in its opposition briefing related to line item data, a term that does not appear in the claims. Appx1339-1344; Appx1789-1794. Specifically, Think

Computer claimed that "Petitioner omits the material limitation for 'line item data' when construing and applying many claim terms, including 'purchase list,' 'product catalog,' and 'transaction record.'"   Appx1342; *see also* Appx1789. Think Computer argued that the claim terms "purchase list," "product catalog," and "transaction record" required "line item data" and offered a proposed construction of "line item data" that included those terms.   Appx1342-1344; Appx1790-1794.

Think Computer further argued that, since Square failed to acknowledge that line item data was required by various claim terms, Square had also failed to demonstrate that line item data was known in the art.  Appx1347-1349; 1796-1799. Moreover, Think Computer claimed that "'line item data' does not exist in the prior art."  Appx1348; Appx1798.

The only mention of the bidirectional accounts limitation was a passing reference in Think Computer's preliminary response to the ex parte prosecution and a statement in its response to support its argument that Dalzell was similar to art already considered by the examiner.   Appx1313, Appx1808-1809; *see also* Appx1302-1305; Appx1783-1785.

### 3.    Think Computer never mentioned bidirectional accounts in its motion to amend.

As with Think Computer's opposition briefing, the sole focus of the motion to amend was line item data.  Appx1757-1781.  Think Computer amended the

independent claims to add the limitation "said payment system storing and communicating line item transaction data." Appx1758-1766. Further, Think Computer again emphasized the importance of line item data to the invention. Appx1772 ("The inventor, Aaron Greenspan, solved a nagging problem in July 2009 that resulted in U.S. patent number 8,396,808. Mr. Greenspan wanted to capture line item data from the point-of-sale and transfer it through a payment system intact so that he did not have to enter it manually for accounting and tax purposes.").

The sole argument Think Computer advanced as the basis for patentability, for which the patent owner bears the burden on a motion to amend, was that "none of the references cited in the Decision to Institute CBM review, disclose, or suggest that line item transaction data is integrated into the payment system or stored in the transaction." Appx1774; *see also* Appx1773-1777. Think Computer further claimed that none of the other prior art cited by Square in the petition or prior art cited by the Canadian Patent Office disclosed the added line item data limitation. Appx1777-1781.

No argument relating to bidirectional accounts was raised in the motion to amend. Appx1757-1781. In fact, bidirectional accounts never appears in the motion to amend. *Id.*

**4.    Square's reply and opposition to the motion to amend focused on line item data.**

Square focused on addressing the issues raised by Think Computer in its reply and its opposition to the motion to amend.  Appx2179-2181; Appx2210-2211.  In the opposition to the motion to amend, Square first addressed the scope of the proposed amended claims and then identified each of the references disclosing line item data, including Dalzell.  Appx2179-2206.  Among those references, Square identified two references not included in the petition that disclosed line item data.  Appx2199-2206.  In explaining why it would have been obvious to combine one of the new references with Bemmel and Dalzell, Square stated: "It would have been obvious for one of ordinary skill in the art to combined this feature of Dohse with Bemmel and Dalzell, as adding the personal financial management feature of Dohse to the electronic marketplace and bidirectional account features of Dalzell together with the authentication features disclosed by Bemmel would offer an additional benefit to customers."  Appx2201-2202.  This is the only mention of bidirectional accounts in both Square's reply and opposition to the motion to amend.

**5.    Think Computer raised the bidirectional accounts limitation for the first time in its reply to the motion to amend.**

The reply to the motion to amend is the first and only instance where Think Computer raised the bidirectional accounts limitation as a basis for patentability.

Appx2373-2374; *see also* Appx2369-2374.   Importantly, Think Computer raised

this argument only after Square had submitted all of its briefing for the proceeding

and had no opportunity to respond.   Even then, Think Computer's argument was

only that Dalzell allegedly failed to disclose bidirectional accounts because it

requires "two extra steps" before users are able to take advantage of bidirectional

accounts.   Appx2373.   The entirety of Think Computer's argument was:

> Petitioner incorrectly contends that the '808 Patent is not patentably distinct over Dalzell because Dalzell supports "bidirectional account features." (Paper 29 at 20-21.)  Yet the '808 is patentably distinct over Dalzell because Dalzell does not support bidirectional accounts at all, let alone send or receive line item data.
>
> "[0059] As is conventional, users of the marketplace system *can register online as marketplace sellers* and *thereafter* create marketplace listings.   As part of seller registration and/or as marketplace listings are created, the system may allow the user/seller to . . . specify a bank account into which proceeds from sales are to be deposited by the system or its operator." (Ex. 1006, (emphasis added).)
>
> This represents *two extra steps*: registering a new seller account to enable the receipt of funds, and adding a new external payment account to hold them. In other words, Dalzell does not support bidirectional accounts. A purchaser specifies a particular payment card to make payments, but Dalzell—which is a marketplace, not a payment system—does not support using the same card to receive payments.  The reverse is also true: entering ACH bank information for a seller account does not permit use of the same bank account to transmit funds from a purchaser account.  Either way, *Dalzell requires two extra steps versus the '808 Patent*.
>
> To get around this, Dr. Sadeh makes an unsupported logical leap. (Ex. 1002 at ¶ 151).   "As illustrated in the citation listed above, according to Dalzell, a user account stores both payment information and bank account information (in particular for sellers).   For each

account, the system stores the information necessary for that account to be both a buyer and seller. *See also* Ex. 1006 at [0061]." (*Id.*)  The first sentence is true, but the second sentence is not because, as [0059] points out, the system must create a new and separate account for sellers that also uses separate payment data, and therefore the system does not "store[] the information necessary for that account to be both a buyer and seller." (*Id.*) Accordingly, Dalzell fails to satisfy the first step of proposed claim 23 (original claim 1), and the '808 Patent is patentably distinct over Dalzell.

Appx2373-2374 (emphasis added).  This argument was directed to the original claims and was unrelated to the subject of the motion to amend, which dealt with adding "line item transaction data" limitations.  It was not responsive to any argument raised by Square in the opposition to the motion to amend, which focused on the proposed line item data limitation.  Moreover, despite arguing that Dalzell did not meet the bidirectional accounts limitation, Think Computer still offered no construction for this limitation and made no mention of the patent file history.

In view of Think Computer's improper and untimely argument, Square raised with the Board that Think Computer's argument was beyond the scope of the motion to amend or the patent owner response.  Appx2413-2416.  The Board gave Square leave use its motion to exclude to identify the portions of the reply to the motion to amend that exceeded the proper scope of a reply.  Appx2415.  In accordance with the Board's instruction, Square identified the portions of the reply to the motion to amend containing Think Computer's untimely argument in its

motion to exclude.  Appx2426-2429.

> **6.     The Board rejected Think Computer's argument that the claims prohibit extra steps and found that Dalzell disclosed the bidirectional accounts limitation.**

Despite being new argument, the Board considered Think Computer's argument and rejected it.  The Board discussed at length the term "wherein the first account and the second account are adapted to selectively function as either a merchant or a purchaser account during any particular transaction."  Appx11-15. The Board noted that Think Computer had not set forth any particular construction for this term and rejected Think Computer's argument that the claims prohibit extra steps:

> Through its briefing (PO Reply 4–5) and at oral argument, Patent Owner appears to proffer a construction of bidirectional accounts that distinguishes bidirectional accounts from the prior art.  Unfortunately, we are unable to discern precisely what that construction is. The closest we are able to discern as pertaining to a claim construction, from Patent Owner's assertions, is that bidirectional accounts cannot have extra steps.  To that end, we are unclear as to the relevance of steps in relation to bidirectional accounts, as bidirectional accounts would indicate an account having specific features, not steps.  Insofar as the claim limitation at issue only recites the end-product of those steps, however, and not the steps necessary to achieve the end-product, Patent Owner's assertions are misplaced.

Appx12.  The Board added that "[a] basic canon of patent law is that, absent limiting language, a claimed step does not preclude additional steps, so long as the claim language is met."  Appx13.

The Board also considered that "Patent Owner may be asserting that in order

to meet 'bidirectional accounts,' a particular account must function *simultaneously* as both a merchant account and purchaser account." Appx13. The Board focused on the term "selectively" from the claim element in addressing this assertion. The Board found that "ordinary and customary usage of this word denotes expressly that a particular account need *not* function *simultaneously* as both a merchant account and a purchaser account; a user is permitted expressly to select which account mode is desired at the appropriate point in time." Appx13-14.

This, the Board explained, was consistent with the specification, which stated:

> An entity (e.g., a person, business, or other legally recognized entity) preferably creates an account within the payment system. The accounts of the payment system are preferably designed so that an account may selectively function as either a merchant or a purchaser during any particular transaction. In other words, within the scope of all transactions, accounts of the payment system can function as bi-directional transaction accounts.

Appx14 (citing Appx63 at 3:15-22). The Board concluded that the "[s]pecification discloses expressly that being able to select which account mode is desired is the same as 'bi-directional transaction accounts.'"

The Board further rejected Think Computer's argument that the prior art did not disclose the bidirectional accounts limitations because it disclosed different payment types (*i.e.*, credit card versus bank account/ACH) for the purchaser mode and merchant mode. Appx14. The Board commented that:

> [T]he claim limitation does not require that the payment type be the same for both the purchaser mode and the merchant mode of the account; on this point, the claim only requires that the account have a purchaser mode and a merchant mode. Thus, the fact that the purchaser mode of an account may rely on a payment cards with the merchant mode of the account may rely on ACH is immaterial.

Appx14. After completing its analysis, the Board concluded that this term does not require an express construction and further reiterated that none of the features identified by Think Computer were required. Appx15.

Applying this construction to Dalzell, the Board found that "the presence of extra steps" to enable an account to function as both a "buyer" and "seller" account is not "relevant to whether or not a prior art reference discloses a bidirectional account" as required by the '808 patent claims. Appx28. Addressing Think Computer's contention that paragraph 59 requires a separate seller account, the Board stated:

> [A] more logical reading of paragraph 59 of Dalzell is that a buyer, from a particular account, can add a seller feature to that particular account, without the need to create a whole new account. Such a finding is supported by extensive analysis and testimony by Dr. Sadeh-Koniecpol, with explicit citations to Dalzell, which we find credible, reasonable, and persuasive.

Appx29. Accordingly, the Board found that "Dalzell corresponds properly to the 'bidirectional accounts' required by independent claims 1 and 20–22." Appx28. As the Board addressed all of Think Computers arguments on the merits, it denied Square's motion to exclude as moot. Appx37.

- 25 -

### 7. Think Computer raised a new argument for the bidirectional accounts limitation in its request for rehearing.

Think Computer filed a request for rehearing raising a new argument relating to the bidirectional accounts limitation—that the claim language "during any particular transaction" requires an account to be bidirectional for all transactions. Appx2552-2571. Specifically, Think Computer faulted the Board's construction of the term "are adapted to selectively function as either a merchant account or a purchaser account during any particular transaction," arguing that "this phrase means that all of these claims require that one account can simultaneously assume the role of a merchant account in Transaction A while assuming the role of a purchaser account in a different Transaction B." Appx2555.

Think Computer claimed the Board focused exclusively on the term "selectively" and failed to give any weight to the claim language "during any particular transaction." Appx2555-2556. According to Think Computer, "all of the claims require that any particular financial account in the payment system *must* have the capability to *simultaneously* function as both a merchant account *and* a purchaser account within the broad scope of '*any particular transaction,*' or in other words, all transactions." Appx2556 (emphasis in original). Think Computer further argued that this "functionality must work over multiple transactions." Appx2557.

In support of its argument, Think Computer referenced portions of the file history.  First, Think Computer pointed to a declaration submitted by the patent owner stating: "'At that point it became clear to me that there was a need for an accounting and payment system that could *simultaneously* treat the same legal entity as both a client and vendor without duplicating data, as described in claim 1 of the above referenced application…'"  Appx2558 (citing Appx342:26-Appx343:2 (emphasis added by Think Computer)).  Think Computer also cited to the portion of the file history where applicant argued that "'At most, [Wong [sic]] discloses that a *person* can assume these different roles, however, this does not teach that an *account within a payment system* is adapted to selectively function as either a merchant account or a purchaser account during any particular transaction, as in Applicant's claim 1.'"  *Id.* (citing Appx340 (emphasis in original)).

With respect to Dalzell, Think Computer argued that Dalzell does not disclose the bidirectional accounts limitation because it relies on two separate payment accounts: "uni-directional user accounts and . . . uni-directional payment accounts."  Appx2562.  According to Think Computer, the buying and selling functions of user accounts in Dalzell utilize different payment methods, which cannot "function in both directions."  Appx2563; *see also* Appx2562 ("Dalzell specifies that "seller accounts only work with ACH *to send money from the marketplace to the seller*, and that purchaser accounts only with credit cards *to*

*send money from the purchaser to the marketplace*.") (emphasis in original).

Think Computer concluded that the "bi-directional account functionality is *required* in all claims, during *every* transaction" and it is not sufficient that an account have a purchaser mode and a merchant mode. Appx2563. Nowhere in its request for rehearing did Think Computer argue that the bidirectional accounts limitation requires a payment system and not a user to designate a role of merchant or purchaser, or that the file history had effectuated a clear disavowal.

### 8.    The Board rejected Think Computer's arguments as both untimely and failing on the merits.

The Board first found that Think Computer's arguments were untimely and inappropriate for a request for rehearing, which is supposed to identify issues "the Board misapprehended or overlooked" that were "previously addressed in a motion, an opposition, or a reply." Appx40-46 (citing 37 C.F.R. § 42.71(d)). The Board found that "Patent Owner has failed to meet both the letter and spirit of the aforementioned rules governing requests for rehearing." Appx42; *see also* Appx41 ("[W]hile Patent Owner liberally uses the phrase 'misapprehend or overlook,' Patent Owner actually uses the phrase predominantly as a substitute for 'disagree.'"). The Board noted that:

> Patent Owner asserts that the Board misapprehended or overlooked the prosecution history of U.S. Patent No. 8,396,808 B2 ("the '808 Patent") in construing "bidirectional accounts." Req. 4–5. In making that assertion, however, *Patent Owner does not identify, and we are unable to discern independently, any previous motion, opposition, or*

*reply in which Patent Owner argued that the prosecution history specifically informs the construction of that term, thus failing to meet the aforementioned portion of the Office Trial Practice Guide. . . .* Because this assertion was not set forth in a previous motion, opposition, or reply, Petitioner did not have the chance to rebut this assertion, especially here, where the trial portion of the proceeding has concluded. Accordingly, if we were to now make a construction in favor of Patent Owner based on assertions concerning which Petitioner did not have a chance to respond, such a determination would be fundamentally unfair to Petitioner, and thus cannot be allowed.

Appx42-43 (emphasis added). In a lengthy discussion, the Board examined Think Computer's various filings, concluding that only the reply to the motion to amend "set[s] forth something that could plausibly be considered a tangential assertion concerning a proper construction of 'bidirectional accounts,'" but even this "does not identify any of the allegedly misapprehended or overlooked portions of the prosecution history, Specification, or claims that are purportedly relevant to a claim construction of 'bidirectional accounts.'" Appx43-46.

Despite finding it had not overlooked Think Computer's arguments because they had not previously been raised, the Board nonetheless addressed Think Computer's arguments on the merits, finding that the newly presented evidence did not alter the Board's construction. Appx47. Specifically, the Board concluded that "'[a]ny particular transaction' means any specific transaction, and is not necessarily limited to all transactions going forward," and that "logically, an account need only function in 'merchant mode' or 'purchaser mode' for that

particular transaction; otherwise the account would be in the awkward position of performing a transaction with itself." *Id.* The Board further concluded that:

> Patent Owner's discussion of the prosecution history on pages 4 and 5 of the Request for Rehearing do not amount to Patent Owner providing an explicit definition of "selectively function," "during any particular transition," or any other claim term as meaning "simultaneously"; nor do Patent Owner's statements rise to the level of a clear and unmistakable disclaimer with respect to the meaning of the claim terms.

Appx47-48. Turning to the Dalzell reference, the Board was "unpersuaded that [its] analysis of Dalzell and 'bidirectional accounts' set forth on pages 28 to 29 of the Final Written Decision should be modified in any way." Appx48.

## D. Think Computer's Brief Introduces Yet Another New Argument.

Think Computer's Brief introduces a new argument. Think Computer again cites to the statement in the prosecution history in its Brief. Br. at 24-26. This time, instead of arguing that it means accounts must be bidirectional for all transactions, Think Computer is arguing that this statement effectuated a disavowal such that a payment system, not a user, must perform the assigning the step. *Id.*

Think Computer also offers formal proposed constructions for the first time on appeal. *Id.* at 19. The table included by Think Computer is telling. *Id.* First, it includes no proposed construction by Square since Think Computer raised this issue after Square's briefing was complete. It also misrepresents the Board's position. First, the Board found this limitation did not require construction.

Second, the construction Think Computer attributes to the Board is incorrect as it suggests that the Board construed this term as allowing a user to "optionally register two separate merchant and purchaser user accounts." Br. at 19. The Board specifically rejected this contention, finding that the bidirectional accounts limitation relates to a single account. *See* Appx11-15; Appx28-29 ("Indeed, we find that a more logical reading of paragraph 59 of Dalzell is that a buyer, from a particular account, can add a seller feature to that particular account, without the need to create a whole new account."). Finally, while Think Computer includes supposed constructions in the chart, they are not discussed as such in Think Computer's brief. Think Computer inexplicably separates the bidirectional accounts limitation in two, but offers essentially the same construction for both halves of the limitation. Beyond arguing disavowal, Think Computer makes no other argument in support of its constructions.

Think Computer's disavowal argument is new as are the proposed constructions, and the arguments in the Brief were never raised to the Board.

## SUMMARY OF THE ARGUMENT

Think Computer presents yet another version of its "bidirectional account" based argument—that, in view of statements it made during *ex parte* prosecution, it disavowed "user selection" such that a payment system, rather than a user, must assign either a merchant role or a purchaser role to a payment account.

Not only is Think Computer's argument untimely, it is incorrect.  As Square explained in its petition, and went uncontested in the CBM, the bidirectional accounts limitation requires that a single account have a merchant mode and a purchaser mode, but the challenged claims do not qualify any particular basis or series of steps by which bidirectional functionality may or may not be exercised.  This is consistent with a plain reading of the claim language and the specification, and is further consistent with the prosecution file history.  Applicant's comments during *ex parte* prosecution relate to the capability of the payment account to selectively function as either a merchant account or a purchaser account, not the means by which that functionality is selected.  At a minimum, applicant's statement is ambiguous and is not a clear disavowal of user selection.

Moreover, Dalzell discloses the bidirectional accounts limitation even under Think Computer's proposed construction.  Dalzell discloses a single user account that stores the payment and bank account information so that the account can be used to either purchase or sell goods.  Dalzell further discloses a marketplace that allows users to flexibly buy or sell items from the same user account.  Depending upon whether the user selects "Sell yours here" or "Add to Shopping Cart," the system assigns the corresponding merchant or purchaser role to the account.

Should this Court decide to entertain Think Computer's new argument, it should affirm the PTAB's construction and finding that claims 1-7, 9-11, 13-17,

and 20-22 are unpatentable in view of the prior art.

## ARGUMENT

## I.    STANDARD OF REVIEW

When reviewing claim construction by the Board, this Court "review[s] underlying factual determinations concerning extrinsic evidence for substantial evidence and the ultimate construction of the claim de novo." *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1280 (Fed. Cir. 2015), *cert. granted sub nom.*, *Cuozzo Speed Techs., LLC v. Lee*, No. 15-446, ___ U.S. ___, 136 S.Ct. 890, 2016 WL 205946 (Jan. 15, 2015).

Moreover, a claimed invention is unpatentable if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious to one of ordinary skill in the relevant art. 35 U.S.C. § 103; *see also Randall Mfg. v. Rea,* 733 F.3d 1355, 1362 (Fed. Cir. 2013).  Whether a claimed invention would have been obvious is a question of law, based on factual determinations regarding the scope and content of the prior art, differences between the prior art and the claims at issue, the level of ordinary skill in the pertinent art, and any objective indicia of non-obviousness. *KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. 398, 406 (2007); *Graham v. John Deere Co. of Kansas City,* 383 U.S. 1, 17-18 (1966).  This Court reviews the PTAB's ultimate conclusion of obviousness *de novo*, with the factual findings underlying that

determination reviewed for substantial evidence. *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

## II.  THINK COMPUTER'S ARGUMENT THAT IT DISCLAIMED USER SELECTION IS NEW ARGUMENT AND SHOULD NOT BE CONSIDERED

Think Computer has waived its argument on appeal by failing to specifically raise it before the Board. To be clear, this is not a matter of Think Computer now offering added nuance, further evidence, or recasting an argument about the prior art as a claim construction argument. Think Computer argues that "[n]owhere did the Board address Think's key contention that user selection of account roles is not *permitted* by the claims," based on arguments during *ex parte* prosecution of the '808 patent. Br. at 17. Quite simply, the Board did not address it because Think Computer never previously made this argument. This "key contention" is being raised for the first time on appeal and this Court should decline to consider this argument.

### A.  Think Computer Never Raised its "User Selection" Argument to the Board or Otherwise Challenged Square's Proffered Claim Construction.

Despite having numerous opportunities to present its argument to the Board, Think Computer never once raised the claim construction argument now before

this Court.  In fact, Think Computer's appeal brief is the first time it has offered a

formal proposed construction relating to the bidirectional accounts limitation.  Br.

at 19.  Notably, Square addressed the construction of the bidirectional accounts

limitation in its petition, discussing the prosecution history statement now relied

upon by Think Computer and stating that "[t]he specification does not define what

constitutes assigning or prescribe any particular method of assigning a role.  Given

the disclosure in the '808 patent, 'assigning' is best understood as allowing a single

user account to take on the role of a recipient of payment or remitter of payment,

depending on the transaction."  Appx96.  Although Think Computer included

claim construction sections in its preliminary response and response relating to line

item data, Think Computer never identified any terms related to the bidirectional

accounts limitation for construction and never disputed Square's interpretation.

Appx1340; Appx1789-1794.

Rather, Think Computer waited until after Square had submitted all briefing

to raise *any* argument relating to the bidirectional accounts limitation.  Think

Computer argued that Dalzell did not disclose the bidirectional accounts limitation

because Dalzell required "two extra steps:" (1) "registering a new seller account"

and (2) "adding a new external payment account."  Appx2373.  This argument,

made in the reply to the motion to amend, was itself untimely and not relevant as it

related to the original claims and should have been raised in Think Computer's

response. *See, e.g.*, 37 C.F.R. § 42.23(b). Moreover, Think Computer's reply argument had nothing to do with claim construction, prosecution history disclaimer, or whether the payment system or user designates the roles of merchant and purchaser accounts for a given transaction. Appx2373-2374.

Think Computer did not mention the prosecution history until its request for rehearing. Appx42-43 ("Patent Owner does not identify, and we are unable to discern independently, any previous motion, opposition, or reply in which Patent Owner argued that the prosecution history specifically informs the construction of that term."). That argument, however, is unrelated to the "user selection" construction before this Court. Instead, Think Computer argued that the term "any particular transaction" required simultaneous merchant and purchaser account functionality for all transactions, not that the applicant had disavowed "user selection." Appx2555-2560. While Think Computer now claims that the Board "never touches the issue of user selection" and "addresses an unrelated issue: whether the claim terms require *simultaneous* merchant and purchaser account functionality," Brief at 25, such an argument is disingenuous as Think Computer never raised the argument it claims the Board overlooked. The Board squarely addressed the only issued raised by Think Computer. Appx42-43; Appx46.

Moreover, Think Computer's arguments attempting to rebut the Board's finding that it raised a new argument in its request for rehearing are unavailing,

Brief at 27-28, and further demonstrate that there is no foundation for Think Computer's current argument. Think Computer first argues that it raised prosecution history disavowal on several occasions, but only cites to Appx1808-1809. Br. at 27. This consists of a background discussion of the *ex parte* prosecution in support of its argument that Dalzell is similar to art considered during original prosecution. Appx1808-1809. The portion of the record identified by Think Computer includes no argument relating to prosecution history estoppel or whether the payment system must designate merchant and purchaser roles. *Id.* Accordingly, Think Computer's assertion that its "position on the prosecution history disavowal of user selection has never changed," Brief at 28, is incorrect. *See also* Appx46 (finding that Think Computer never "identif[ied] any of the allegedly misapprehended or overlooked portions of the prosecution history, Specification, or claims that are purportedly relevant to a claim construction of 'bidirectional accounts'"). Further, as the Board found, it is not sufficient to make passing reference to the bidirectional accounts limitation. Appx45 ("Perhaps Patent Owner is asserting that the issue generally is 'bidirectional accounts,' and since 'bidirectional accounts' generally was mentioned . . . any specific arguments, citations, and evidence made under the general rubric of 'bidirectional accounts' is proper at any time . . . . We disagree.").

Second, Think Computer's assertions that the Board erred in its finding

because Square had previously raised this issue in its petition, Brief at 27-28, are also incorrect. Square never argued that Think Computer disavowed user selection. Think Computer misinterprets Square's position. *Cf.* Br. at 16, 20, 23, 27-28 (arguing that Square agrees with Think Computer's proposed claim construction). Square cited to this portion of the prosecution history in support of its understanding that "a single account can perform the functions of either receiving or sending money, depending on the particular transaction." Appx96-97. Square further explained that the claims say nothing about how (or by which entity) the assigning is performed. *Id.* In other words, Square's position, as set forth in the petition, is that the payment account, rather than the user, can *assume* the role of either purchaser or merchant. This goes to a feature of the account, not how that feature is put into operation.

In sum, Think Computer's current argument—that the prosecution history requires the payment system, not the user, to designate the role of purchaser and merchant within a transaction—is different from the other two arguments it made relating to the bidirectional accounts limitation during the CBM Review. Specifically, it differs from (1) the argument that the bidirectional accounts limitation prohibits extra steps made in its reply to the motion to amend and (2) the argument that the claim language "any particular transaction" requires simultaneous merchant and purchaser account functionality for all transactions

from its request for rehearing.  Quite simply, Think Computer has introduced a new, third argument on appeal.

## B.    This Court Should Not Consider Think Computer's Untimely Claim Construction Argument.

As this Court has recognized, the expedited nature of AIA proceedings require the parties to identify their arguments early.  *See Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1369 (Fed. Cir. May 9, 2016) ("Unlike district court litigation—where parties have greater freedom to revise and develop their arguments over time and in response to newly discovered material— the expedited nature of IPRs bring with it an obligation for petitioners to make their case in their petition to institute.").  That did not happen here.  Instead, Think Computer changed course at the end of the proceeding, moving away from its line item data argument and introducing a variety of arguments relating to bidirectional accounts limitation.  Not only were Think Computer's arguments in the underlying proceeding untimely and improper, Think Computer did not even raise its current argument with the Board and it should not be considered here.  *See, e.g., HTC Corp. v. IPCom Gmbh*, 667 F.3d 1270, 1281 (Fed. Cir. Jan. 30, 2012) ("As a general rule, an appellate court does not consider an issue not passed upon below.").

Think Computer "had an opportunity to argue the . . . issue—at [Square]'s invitation—during briefing on claim construction," and failed to do so, waiving its

right to raise this argument for the first time on appeal. *Id.* at 1282; *see also Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1360 (Fed. Cir. 2004) ("Aradigm, however, never requested that the district court construe any terms in claim 6 and never offered a construction of claim 6. . . . We hold that Aradigm has waived its right to request a construction of claim 6 and that Aradigm has thereby implicitly conceded that the meanings of the terms in claim 6 are clear and not in need of construction."); *Enovsys LLC v. Nextel Communications, Inc.*, 614 F.3d 1333, 1344 (2010) ("Though it had ample opportunity to do so, at no time before or during trial did Sprint Nextel object to the district court's claim construction, request clarification, or offer the construction it now advances on appeal.").

This Court's decision in *Straight Path* is particularly instructive. *Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*, 806 F.3d 1356, 1363 (Fed. Cir. 2015). In *Straight Path*, this Court found that the patent owner failed to preserve a claim construction argument in an IPR by not raising it before the Board:

> [Straight Path] did not request a construction of "process" in its preliminary response to Sipnet's petition to institute *inter partes* review, in its response after the Board instituted the review, or at the oral hearing before the Board. In particular, Straight Path never argued for a construction of "process" under which a process being connected meant something other than its host device being connected. Nor did Sipnet. . . . Because Straight Path's "process"-based challenge depends entirely on its newly proposed construction, which it failed to preserve before the Board, this court does not address the challenge.

*Id.* Here, too, Think Computer failed to raise any claim construction argument

- 40 -

related to the bidirectional accounts limitation in its briefing prior to the request for rehearing, never offered a formal proposed construction, and never argued that "user selection" had been disavowed during *ex parte* prosecution, its current argument on appeal. Accordingly, as in *Straight Path*, Think Computer has failed to preserve its argument before the Board and this Court should not address it. *See id.*; *see also In re Warsaw Orthopedic, Inc.,* 832 F.3d 1327, 1333 (Fed. Cir. 2016) ("[I]n its response to NuVasive's petition, Warsaw did not raise this argument. Accordingly, Warsaw has waived this argument.").

Think Computer does not and cannot point to any authority indicating that a party may raise a claim construction argument for the first time on appeal. Indeed, Think Computer cites to only one case for the proposition that it is "free to present 'new or additional arguments in support of the scope of its claim construction on appeal.'" Br. at 28 (citing *CSS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1371 (Fed. Cir. 2002)). But *CSS Fitness* only permits Think Computer to present arguments "in support of the scope of its claim construction on appeal," not to offer a new claim construction with an entirely different scope. *CSS Fitness*, 288 F.3d at 1371. As this Court stated in its opinion, the key question is "whether the trial court and the party claiming waiver had fair notice and an opportunity to address the issue concerning the scope of a claim limitation." *Id.* In this case, no such opportunity existed. Far from merely "elaborat[ing] upon the argument it

initially made," Think Computer now presents an entirely new argument. *Id.*

This Court's recent decision in *Intertainer* further demonstrates the difference between an argument that has been waived and one that is properly preserved. *Intertainer, Inc. v. Hulu, LLC*, No. 2015-2065, 2016 WL 5361513 (Fed. Cir. Sept. 26, 2016). In *Intertainer*, this Court found no waiver of Intertainer's claim construction argument because "it took the same position that it raises on appeal," only the vehicle through which it was presented changed. *Id.* (finding Intertainer previously raised the argument based on the plain meaning of the disputed term, rather than as a claim construction argument). In contrast to Intertainer, Think Computer is making a new argument, not presenting the same argument in a new way. Think Computer never previously mentioned user selection and never argued that the applicant's statement during *ex parte* prosecution constituted a disclaimer.

Accordingly, Think Computer has waived its argument on appeal.

## III. THE BIDIRECTIONAL ACCOUNTS LIMITATION REQUIRES NOTHING MORE THAN AN ACCOUNT THAT HAS A PURCHASER MODE AND A MERCHANT MODE

### A. The Board Correctly Found That the Bidirectional Accounts Limitation Requires a Single Account to Have a Purchaser Mode and a Merchant Mode.

Despite the fact that it was not raised as a claim construction issue, the Board addressed the proper construction of the bidirectional accounts limitation in

response to the arguments advanced by Think Computer in its reply to the motion to amend.  Appx12 ("Through its briefing (PO Reply 4–5) and at oral argument, Patent Owner appears to proffer a construction of bidirectional accounts that distinguishes bidirectional accounts from the prior art.  Unfortunately, we are unable to discern precisely what that construction is.").  Think Computer's only argument before the issuance of the final written decision was that Dalzell did not disclose bidirectional accounts because it required "two extra steps."  Appx2373. The Board rejected this argument.  Appx12.  Specifically, the Board found that the bidirectional accounts limitation relates to features of the system and not the steps to achieve those features.  Appx12-13 ("[W]e are unclear as to the relevance of steps in relation to bidirectional accounts, as bidirectional accounts would indicate an account having specific features, not steps").

The Board also addressed what it viewed as potentially related arguments, including whether an account must function *simultaneously* as a merchant and purchaser account and whether the payment type has to be the same for both the purchaser mode and the merchant mode, and determined that neither of these was required by the claims.  Appx13-14.  In view of the intrinsic evidence, the Board found that "a user is permitted expressly to *select* which account mode is desired at the appropriate point in time."  *Id.*  Accordingly, "a particular account need *not* function *simultaneously* as both a merchant account and a purchaser account" to

satisfy this limitation. Appx14. The Board further found that "the claim only requires that the account have a purchaser mode and a merchant mode. Thus, the fact that the purchaser mode of an account may rely on payment cards while the merchant mode of the account may rely on ACH is immaterial." Appx14.

The Board revisited its construction in response to Think Computer's filing of a request for rehearing. Think Computer argued in the request for rehearing that "all of the claims require that any particular financial account in the payment system *must* have the capability to *simultaneously* function as both a merchant account *and* a purchaser account within the broad scope of '*any particular transaction*,' or in other words, all transactions." Appx2556; *see also* Appx2557 ("'any particular transaction' [] means that this simultaneous merchant/purchaser account functionality must work over multiple transactions."). Think Computer further argued that, based on statements made during *ex parte* prosecution, the claims require "simultaneous differing account roles across the scope of all transactions." Appx2558.

The Board disagreed, concluding that "'[a]ny particular transaction' means any specific transaction, and is not necessarily limited to *all* transactions going forward," and that, "logically, an account need only function in 'merchant mode' or 'purchaser mode' for that particular transaction." Appx47. The Board further found that the prosecution history did not "rise to the level of a clear and

unmistakable disclaimer with respect to the meaning of the claim terms." Appx47-48.

In sum, despite Think Computer's multiple attempts to import unnecessary requirements into the bidirectional accounts limitation, the Board found that this limitation requires nothing more than a single account that has a "merchant mode" and a "purchaser mode." Appx14, Appx47.

### B.    The Specification Supports the Board's Construction.

The specification demonstrates that the bidirectional accounts limitation only requires that an account have a merchant mode and a purchaser mode. As explained in the '808 patent specification:

> An entity (e.g., a person, business, or other legally recognized entity) preferably creates an account within the payment system. The accounts of the payment system are preferably designed so that an account may selectively function as either a merchant or a purchaser during any particular transaction. In other words, within the scope of all transactions, accounts of the payment system can function as bi-directional transaction accounts.

Appx64 at 3:15-21; *see also* Appx14; Appx96; Appx175-176. The specification further refers to "Step S110, which includes assigning a role of a merchant account to a first account and a role of a purchaser account to a second account within a payment system," and thereby "functions to register a purchaser and a merchant for a transaction within a single integrated system." Appx64 at 3:4-8. There is no description in the specification about when or by what means the "assigning"

occurs.   Accordingly, the specification supports the Board's construction.   *See Tempo Lighting, Inc. v. Tivoli, LLC*, 742 F.3d 973, 978 (Fed. Cir. 2014) (affirming the Board's construction where "nothing in the specification is inconsistent" with it).

Think Computer's argument to the contrary finds no support in the record. Think Computer argues that the "Board erred as a matter of law by construing the claims' bi-directional account elements to include user selection of account roles." Br. at 21.  Think Computer suggests that the proper construction would require that "[a] payment system—not a user—designates a role of merchant account to a first account and a role of a purchaser account to a second account within the payment system." *Id.* at 19.  Think Computer, however, fails to point to *any* evidence from the specification in support of this argument.  *See* Br. at 21-28.

Moreover, Think Computer's proposed construction makes no sense.  As even Think Computer admits, the user *must* at some point choose to be a merchant or purchaser—the system cannot arbitrarily assign these roles or absent user action. Appx2556 ("The human user presumably exists, but is never alluded to directly in either the claims or the Specification as making the choice.").  The specification makes no mention of, let alone enable, a payment system assigning the account a role independent of user action.

Within this void of any actual description of how the assigning step is

executed, it only stands to reason that any payment system would have to perform an "assigning" action at some point to effect the user's choice. In other words, any electronic payment system that allows users to buy and sell items from a single account necessarily requires the user to select which account role to use (for example by choosing an item for purchase or listing an item for sale) and the payment system must somehow effect that choice by presenting relevant options and information. In sum, Think Computer's dichotomy between the "user" and the "system" assigning a role is a distinction without a difference, and is unsupported by the '808 patent.

### C.    There Has Been No Disavowal of User Selection.

#### 1.    The doctrine of prosecution history disclaimer does not apply here.

There is no precedent specifically requiring prosecution history disavowal to apply to the broadest reasonable interpretation standard. At most, the Federal Circuit has found that "[t]he PTO should also consult the patent's prosecution history in proceedings in which the patent has been brought back to the agency for a second review." *Microsoft Corporation v. Proxyconn, Inc.*, 789 F.3d 1292, 1298 (Fed. Cir. 2015). Consulting the prosecution history, however, is not the same as requiring application of the specific doctrine of prosecution history disclaimer to import a limitation clearly absent from the language of the claim itself.

Moreover, prosecution history disclaimer should not apply for the same

reasons that the Patent Office uses the broadest reasonable interpretation in CBM reviews. If a patent owner in a proceeding before the USPTO desires that a claim include a non-recited limitation, it has the ability to utilize the claim amendment procedure to expressly include the limitation. The Supreme Court recently upheld the Patent Office's use of broadest reasonable interpretation in AIA proceedings. *See Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. __, slip op. at 17 (2016). The Supreme Court found that the Patent Office's use of this standard "helps protect the public," and "encourages the applicant to draft narrowly" so that a patent does not unnecessarily tie up too much knowledge and provides public notice as to the scope of the claims. *Id.* In other words, since the applicant has to ability to amend its claims, it should do so rather than relying upon argument to limit the scope of those same claims. *See also Tempo Lighting*, 742 F.3d at 978 ("[T]he PTO is under no obligation to accept a claim construction proffered as a prosecution history disclaimer, which generally only binds the patent owner.").

Think Computer had the opportunity to amend its claims to include any limitation it believed should be recited. Think Computer, in fact, took advantage of this opportunity and filed a motion to amend its claims to add a limitation related to line item data. Appx1757-1781. Think Computer never addressed the bidirectional accounts limitation in its motion to amend and never argued prosecution history disavowal limited the claims. *Id.*; *see also* Appx42-43. Not

only does this underscore the waiver concerns addressed above, it highlights the reason prosecution history disavowal should not apply under the broadest reasonable interpretation in this case.  If Think Computer wanted to limit its claims to the payment system, not the user, assigning a merchant or purchaser role to an account, it should have amended its claims to explicitly require this rather than belatedly arguing it was required in view of statements from the original prosecution.

Nevertheless, Think Computer failed to timely argue and, therefore, waived its prosecution history disclaimer argument.  Further, even if the doctrine applies to CBM review, as discussed below, Think Computer did not clearly and unmistakably disavow user selection.

## 2.    Think Computer did not clearly and unmistakably disavow "user selection of account roles."

The statement from the prosecution history relied upon by Think Computer for its argument of prosecution history disavowal falls far short of the "clear and unmistakable" standard required to establish prosecution history disclaimer.  *SAS Inst., Inc. v. ComplementSoft, LLC.*, 825 F.3d 1341, 1349 (Fed. Cir. 2016) ("[F]or prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable.").

As stated by this Court, "[a]n ambiguous disclaimer . . . does not advance the patent's notice function or justify public reliance, and the court will not use it

to limit a claim term's ordinary meaning." *SanDisk Corp. v. Memorex Prod., Inc.*, 415 F.3d 1278, 1287 (Fed. Cir. 2005). Accordingly, a statement made during prosecution that "is amenable to multiple reasonable interpretations . . . does not constitute a clear and unmistakable surrender" amounting to a disclaimer. *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1359 (Fed. Cir. 2003).

Think Computer claims that it disavowed user selection by stating that "[a]t most, [the prior art] discloses that a *person* can assume these different roles, however, this does not teach that an *account within a payment system*, is adapted to selectively function as either a merchant account or a purchaser account." Br. at 14-15 (citing Appx340). This statement does not approach a "clear and unmistakable" disavowal of "user selection"—in fact, it fails to mention "user selection" at all. To be clear, the applicant's statement says nothing about whether a user or the system itself assigns which mode the account is in at any given time; only that the claim requires an account that can function in either mode. In other words, the payment system has to allow each *account* to "selectively function" as either a merchant or a purchaser within the system, rather than simply allowing a *person* to assume either role (for example by creating separate buyer and seller accounts).

In addition, Think Computer itself offers different interpretations of this exact same statement, first claiming that it requires the account to simultaneously

be a merchant and purchaser account, *see* Appx2558, and now claiming that it means a user cannot select the mode used by the account, Brief at 24-26. *See Cordis*, 339 F.3d at 1287. Neither of these necessarily follow from the statement made during *ex parte* prosecution. Rather, as the Board correctly decided, the prosecution history, specification, and claims all indicate that the bidirectional accounts limitation requires nothing more than a single account capable of functioning in a "merchant mode" or "purchaser mode," in any particular transaction. Appx14, Appx47.

Further, Think Computer's attempts to cast the applicant's statement as a critical reason for the patent's eventual allowance are disingenuous. Br. at 26. Applicant did not emphasize "user selection" in the response to the examiner's final office action. Appx340. Instead, applicant focused his arguments on the "product catalog" element of the claims. *See* Appx334-341. Moreover, the Notice of Allowability does not even mention bidirectional accounts and focuses on the "product catalog" elements. *Cf.* Brief at 15 ("Examiner accepted the applicant's narrowed construction of the bi-directional account element."), 23 ("Based on this express narrowing of the claims, the examiner responded with a notice of allowance."); Appx294 ("To be clear, there is nothing in this particular art . . . that describes the limitation of: 'adding an item offered for sale by the merchant from a product catalog stored in the payment system to a purchase list' that can be

properly combined with Wong to read on this claim."); *see also* Appx291-299. This further demonstrates that the applicant did not disavow "user selection." *See Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1064 (Fed. Cir. 2016) (affirming the Board's rejection of Patent Owner's prosecution history disclaimer argument where the applicant "offered several other amendments as possible bases for distinguishing the prior art").

## IV.   THE BOARD CORRECTLY CONCLUDED THAT DALZELL MEETS THE BIDIRECTIONAL ACCOUNTS LIMITATION

### A.   The Board's Decision that Dalzell Discloses the Bidirectional Accounts Limitation Is Supported by Substantial Evidence.

As correctly determined in the final written decision—and confirmed in the Board's denial of Think Computer's request for rehearing—Dalzell discloses an electronic payment system that "assign[s] a role of a merchant account to a first account and a role of a purchaser account to a second account within a payment system wherein the first account and the second account are adapted to selectively function as either a merchant account or a purchaser account during any particular transaction," as required by claim 1, and the similar limitations of the independent claims referred to as the bidirectional accounts limitation. *See* Appx28-29 (citing Dr. Sadeh-Koniecpol at Appx194-198 and Dalzell at Appx850-851, Appx870 at [0009], Appx872-874 at [0027], [0049], [0057], [0061], Appx876 at [0085], [0087], Appx880-881 at [0132], Appx883 at [0163]); Appx48.  This functionality

is made explicit in the teaching of Dalzell, which allows users to flexibly buy or sell items from the same user account. Appx194 ("[U]sers are not restricted to merely purchase or sell items while using the invention, and Dalzell does not require switching accounts to engage in either purchasing or selling."). The ability of users to buy or sell items from the same account is an express purpose of Dalzell, which describes a system to facilitate and encourage users to act as both buyers and sellers from the same account:

> An important aspect of the embodiment depicted in FIGS. 1A and 1B is that the option to sell a unit of an item within the marketplace is displayed in conjunction with (e.g., on the same product detail page as) an option to buy a unit of that item. Thus, users who access the catalog for purposes of making purchases are exposed to the process by which they may list items for sale. As a result of such exposure, users are more likely to become marketplace sellers. Another benefit is that users can use the same catalog search and navigation tools for both buying and selling products.

Appx876 at [0087]; *see also* Appx194; Appx873 at [0049]; Appx874 at [0061].

In Figure 1A, Dalzell illustrates the interface by which a user can choose to act as either a purchaser or merchant for a particular item. Appx850. This interface invites users to "Buy & Sell Used Items," including an "Add to Shopping Cart" button, which allows the user to act as a "purchaser" and a "Sell yours here" button, which allows the user to act as a "merchant," from the same account. Appx195-197. Depending on which of these interactions the user chooses, the user is assigned the role of a "purchaser" or "merchant" by the payment system.

Appx197.  Accordingly, as stated by Dr. Sadeh:

> [F]or each transaction under Dalzell, the user account is assigned the role of a merchant or purchaser account depending on whether the user is buying or listing an item in one the marketplace listings. . . . Each transaction therefore includes both a merchant and a purchaser, and any user's account can be assigned either role depending on the transaction.

Appx197-198.

Furthermore, Dalzell explicitly discloses that individual user accounts store information used for both buying and selling.  Specifically, "[f]or each user," the "user database" stores information including "payment information" and "bank account information (particularly for sellers who have elected to have sales proceeds deposited into their bank accounts)."  Appx880-881 at [0132]; *see also* Appx194-195.  Each user account therefore includes all information necessary for that account to act as a purchaser or merchant for any particular transaction.  Appx194-195.  Thus, Dalzell satisfies the bidirectional accounts limitation by providing the same functionality that Think Computer ascribes to the '808 patent: a "system capable of adaptively functioning in either a merchant or purchaser role for any particular transaction, without requiring a duplicate account for the opposite role" to "enable[e] simplified bookkeeping by eliminate[e] redundant database records."  Br. at 11.  Accordingly, the Board's conclusion that Dalzell discloses the bidirectional accounts limitation is supported by substantial evidence.

## B.   Think Computer's Argument That the Board Failed to Engage in Critical Fact Findings Is Belied by the Record.

The Board made all necessary factual findings to show that Dalzell disclosed the bidirectional accounts limitation.  In support of its determination, the Board discussed the Dalzell reference at length, including citations to numerous instances in which Dalzell discloses how marketplace users can add merchant capabilities to their accounts.  *See* Appx16-18, Appx28-29.  In addition, the Board explicitly addressed all arguments raised by Think Computer with respect to this element, including arguments that were not made until Think Computer's filing of the reply to the motion to amend.  *See* Appx11-15; Appx28-29.  Accordingly, the Board's conclusion that Dalzell (in combination with Bemmel and supporting references) renders the instituted claims obvious is duly supported by the facts and the plain language of the Dalzell reference.

In arguing to the contrary, Think Computer appears to rest on two grounds. First, Think Computer erroneously argues that the disclosure from Dalzell indicating that it "*can* be made to operate in a particular way, does not mean that it discloses doing so."  Br. at 31-32.  Second, Think Computer misstates the Board's findings to imply that they rely on a single paragraph of Dalzell, then argues that this disclosure is insufficient.  Neither argument is persuasive.

**1.    The Board's determination relies on explicit disclosures in Dalzell.**

Think Computer's primary argument rests upon a misreading of the Board's decision and the applicable law.  Specifically, Think Computer argues that "the Board only found that the marketplace disclosed by Dalzell *could* allow a user to add a seller 'feature' to her existing buyer account. . . . But nowhere does the Board explain how it discloses the *means* by which a user could carry this out." Brief at 31-32.  But this ignores the Board's citation to numerous paragraphs of Dalzell which disclose precisely how this is accomplished, as well as the Board's explicit reliance on the testimony of Dr. Sadeh, expounding on the same.  Appx29 (citing Dalzell at Appx850-851, Appx870 at [0009], Appx872-874 at [0027], [0049], [0057], [0061], Appx876 at [0085], [0087], Appx880-881 at [0132], Appx883 at [0163]).  To be clear, the Board cited to *explicit disclosures* in Dalzell regarding how the user can add "seller" features to his account, how information for the buyer and seller is stored in the same account, and how the system encourages users to act as both purchasers and merchants, and found that "a buyer, from a particular account, can add a seller feature to that particular account, without the need to create a whole new account." *Id.*  Think Computer cannot provide any support for its unfounded claim that these factual findings are somehow insufficient for a determination of obviousness under 35 U.S.C. § 103.

Seemingly ignoring the disclosure in Dalzell, Think Computer insinuates

repeatedly that a single user account with both buyer and seller features is a mere possibility in Dalzell, rather than a disclosed feature.  Br. at 30-34.  But, as the Board properly concluded, the fact that additional steps are necessary to establish bidirectional account capabilities in Dalzell—a user must register to add the seller "feature" to his account to make the account bidirectional—does not undermine this explicit disclosure.  *See* Appx12-13; Appx28-29.

Moreover, to the extent that Think Computer is arguing that the system taught by Dalzell is somehow not enabled because "[b]uying and selling accounts have fundamentally different infrastructural requirements" and "Dalzell contains no explanation of how a user would set up such an account," Brief at 32, this argument is irrelevant.  It is black letter law that "[u]nder an obviousness analysis, a reference need not work to qualify as prior art; it qualifies as prior art, regardless, for whatever is disclosed therein."  *Geo. M. Martin Co. v. All. Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1302 (Fed. Cir. 2010) (internal citation omitted); *Unwired Planet, LLC v. Google Inc.*, Case Nos. 2015-1810, -1811, slip op. at 10 (Fed. Cir. Nov. 15, 2016) ("Unwired . . . . faults the Board for equating prioritization schemes that 'sometimes return a farther result' with 'farther-over-nearer ordering.'  We reject this argument because combinations of prior art that sometimes meet the claim elements are sufficient to show obviousness."); *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir.

1989) ("Even if a reference discloses an inoperative device, it is prior art for all that it teaches.").

Think Computer does not, because it cannot, cite any support for its argument that explicitly disclosed teachings in the prior art references are not enough to support the Board's factual finding that Dalzell renders obvious the bidirectional accounts limitation of the instituted claims. Rather, Think Computer cites to two readily distinguishable cases: *In Re Rijckaert*, 9 F.3d 1531 (Fed. Cir. 1993) and *In re Oelrich*, 666 F.2d 578 (CCPA 1981). In both cases, the cited prior art did not include explicit disclosure of the respective limitations in question—indeed, it did not include any disclosure at all. Instead, both cases address the question of whether particular elements are inherent in the prior art. *Rijckaert*, 9 F.3d at 1533-34; *Oerlich*, 666 F.2d at 580-81. In light of the ample disclosure in Dalzell, there was no such issue before the Board here, and both cases are inapplicable. Accordingly, Think Computer's argument that Dalzell does not sufficiently disclose the bidirectional accounts limitation is unavailing.

### 2. Think Computer's implication that the Board relied exclusively on paragraph 59 mischaracterizes the Board's decision.

Think Computer implies that the Board relied exclusively on paragraph 59 of Dalzell to meet the bidirectional accounts limitation, then argues that this paragraph does not contain sufficient disclosure. Br. at 32-33. As discussed

above, the Board cited to numerous portions of Dalzell in supporting its conclusion, in addition to citing to "extensive analysis and testimony by Dr. Sadeh-Koniecpol, with explicit citations to Dalzell, which we find credible, reasonable, and persuasive." Appx29.

Paragraph 59 was first raised by Think Computer, *see* Appx2373-2374, and was not relied upon by either the Board or Square. Indeed, the Board's discussion of this portion of Dalzell in its decision served to rebut Think Computer's arguments: "Paragraph 59 of Dalzell does not support Patent Owner's assertion that a new seller account must be created." Appx29. Think Computer's argument that "paragraph 59 of Dalzell contains no explanation of how a user would set up such an account," Brief at 32, and that paragraph 0059 "discusses only a user's *separate* registration of a seller account," Brief at 33, is therefore meritless. Rather, as the Board explained, in light of the additional disclosure in Dalzell and the testimony of Dr. Sadeh-Koniecpol, "a more logical reading of paragraph 59 of Dalzell is that a buyer, from a particular account, can add a seller feature to that particular account, without the need to create a whole new account." Appx29.

## C. Dalzell Meets the Bidirectional Accounts Limitation Even Under Think Computer's Proposed Claim Construction.

Even under Think Computer's construction requiring that the "*payment system* . . . flexibly selects account roles," Brief at 30, Dalzell discloses the bidirectional accounts limitation. For example, once the user indicates a desire to

sell an item by clicking on the "Sell yours here" button shown in Figure 1A, Appx850, the system assigns the seller role to the user account and allows the user to list the item for sale according to the process detailed in Figure 6, Appx863. *See also* Appx881 at [0142].  Similarly, once the user decides to purchase an item and clicks the "add to shopping cart" button shown in Figure 1A, Appx850, the system assigns the purchaser role to the user account and allows the user to send money to the merchant.  *See also* Appx876 at [0081].  In other words, Dalzell discloses the payment system assigning the merchant role or purchaser role to an account. Accordingly, Dalzell meets the bidirectional accounts limitation under the construction proposed by Think Computer.

## CONCLUSION

For the foregoing reasons, Square respectfully requests that this Court affirm the Board's final written decision.

Date: December 16, 2016                    Respectfully submitted,

By    */s/ Michael T. Rosato*
      Michael T. Rosato

Attorney for Appellee
SQUARE, INC.

## PROOF OF SERVICE

I hereby certify that counsel for Appellant Think Computer Corporation has been served with a true and correct copy of the above and foregoing document via the Court's CM/ECF system on December 16, 2016.  A list of those so served appears below.

Isaac Rabicoff (isaac@rabilaw.com)
Rabicoff Law LLC
73 W. Monroe St.
Chicago, IL 60603
Telephone:  (773) 669-4590


/s/ Michael T. Rosato
Michael T. Rosato

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

(1)    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32 (a)(7)(B).  The brief contains 13,855 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32 (a)(7)(B)(iii).

(2)    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32 (a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32 (a)(6).  The brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Date:  December 16, 2016

_____*/s/ Michael T. Rosato*_____
Michael T. Rosato

Attorney for Appellee
SQUARE, INC.