———————————

No. 16-1818

———————————

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

———————————

THINK COMPUTER CORPORATION,

Appellant,

v.

SQUARE, INC.,

Appellee.

———————————

On Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board
No. CBM2014-00159
Patent 8,396,808

———————————

APPELLANT'S REPLY BRIEF

———————————

RABICOFF LAW LLC
Isaac Rabicoff
73 W Monroe St
Chicago, IL 60603
(773) 669-4590

## CERTIFICATE OF INTEREST

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

*Think Computer Corporation v. Square, Inc.*

No. 16-1818

Counsel for the appellant certifies the following:

1.     The full name of every party or amicus represented by me is:

Think Computer Corporation.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Not applicable.

3.     All parent corporations and any publicly held companies that own  10 percent or more of the stock of the party or amicus represented by me are:

None.

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

See Attachment A.

Dated: <u>January 10, 2017</u>     <u>/s/ Isaac Rabicoff</u>
                                        Isaac Rabicoff


## ATTACHMENT A TO CERTIFICATE OF INTEREST

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the  trial court or agency or are expected to appear in this court are:

> Isaac Rabicoff
> RABICOFF LAW LLC
> 73 W Monroe St
> Chicago, IL 60603
> (773) 669-4590
>
> Michael Aschenbrener
> Brian Noack
> Robert Paladino
> Aschenbrener Law P.C.
> 815 West Van Buren Street, Suite 415
> Chicago, IL 60607
> (312) 462-4922

# TABLE OF CONTENTS

Table of Authorities...................................................................................... v

Argument ........................................................................................................ 1

I.    This Court may review the Board's misconstruction of the bi-
      directional account element for its failure to consider the
      prosecution history disclaimer.......................................................... 1

      A.    Square now contradicts its original construction of the
            bi-directional account element as excluding user
            selection. ................................................................................... 1

      B.    Think timely presented its prosecution history
            disclaimer argument before the Board...................................... 3

      C.    The Board had no discretion to disregard the
            prosecution history disclaimer of user selection................... 5

II.   Even without the prosecution history disclaimer, the Board
      misconstrued the bi-directional account element. ........................... 7

      A.    Exclusion of user selection is dictated by the claims'
            plain meaning and is positively confirmed by the
            prosecution history. ................................................................. 7

      B.    The Board construed claim language based on the
            specification that contradicted the claims' plain
            meaning. ..................................................................................... 9

Conclusion .................................................................................................... 12

Certificate of Filing and Service
Certificate of Compliance

# TABLE OF AUTHORITIES

*D'Agostino v. Mastercard Int'l, Inc.,*
    Nos. 2016-1592, 2016-1593, 2016 U.S. App. LEXIS 23025
    (Fed. Cir. Dec. 22, 2016)..............................................................................4

*Interactive Gift Exp., Inc. v. Compuserve Inc.,*
    256 F.3d 1323 (Fed. Cir. 2001)..................................................................4

*Microsoft Corp. v. Proxyconn, Inc.,*
    789 F.3d 1292 (Fed. Cir. 2015)..................................................................5

*Straight Path IP Group, Inc. v. Sipnet EU S.R.O.,*
    806 F.3d 1356 (Fed. Cir. 2015)............................................................5, 8-10

*Tempo Lighting, Inc. v. Tivoli, LLC,*
    742 F.3d 973 (Fed. Cir. 2014)..................................................................5-6

ARGUMENT

**I.    This Court may review the Board's misconstruction of the bi-directional account element[1] for its failure to consider the prosecution history disclaimer.**

**A.    Square now contradicts its original construction of the bi-directional account element as excluding user selection.**

Under the "Claim Construction" heading of its petition,

Square presented the prosecution history disclaimer now at issue:

> **In distinguishing from a prior art reference cited by the examiner during prosecution**, the applicant further clarified that while the reference "discloses that a *person* can assume these different roles, . . .this does not teach that an *account*

_____

[1] The "bi-directional account element" or "bidirectional account limitation" is the first element of the independent claims, previously defined by both parties as: "assigning a role of a merchant account to a first account and a role of a purchaser account to a second account within a payment system wherein the first account and the second account are adapted to selectively function as either a merchant account or a purchaser account during any particular transaction." Appx67 at claim 1.

> within a payment system is adapted to selectively function as either a merchant account or a purchaser account during any particular transaction." Ex. 1004 at 58 (Response to Office Action mailed on Oct. 24, 2012, at 14) (emphasis added).

Appx96 (emphasis added) (citing Appx1676-1677). Square interprets the applicant's disavowal of user selection—excluding "a person can assume these different roles"—as "distinguishing from a prior art reference cited by the examiner during prosecution." *Id.*

In the sentences that immediately follow, Square makes its construction even more explicit:

> Accordingly, the alleged distinguishing feature of the claimed invention is that a user account (**rather than a human person**) can assume or function as either role. Notably, **the claims say that these roles are assigned by the claimed system.**

Appx96-97 (citations omitted; emphasis added). Square, relying on the prosecution history disclaimer, describes what "the claims say": that account roles are "**assigned by the claimed system.**" Appx97 (emphasis added).

B.  **Think timely presented its prosecution history disclaimer argument before the Board.**

From the beginning, Think agreed with Square's original claim construction of the bi-directional account element. In fact, Think argued in its principal response brief that the Examiner accepted the applicant's express disclaimer of user selection by finding that the prior art "only teaches the limited concept that users could assume the role of seller or buyer" instead of the claimed system assigning such roles. Appx1808-1809.

In its Final Written Decision, the Board deviated from this undisputed claim construction, construing the bi-directional account element to permit user selection. Appx14. Think moved for rehearing, notifying the Board that it incorrectly "interpret[ed] [the bi-directional account element] to involve selection of account roles by a human being, rather than the payment system," and reaffirming that the prosecution history clearly excluded such user selection. Appx2555-2556, 2558.

In its appeal, Think has only extended arguments to defend

— 3 —

the original scope of claim construction presented to the Board, and has raised no inconsistent claim construction that would be subject to the doctrine of waiver. *See D'Agostino v. Mastercard Int'l, Inc.*, Nos. 2016-1592, 2016-1593, 2016 U.S. App. LEXIS 23025, *9 (Fed. Cir. Dec. 22, 2016); *see also Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1346-47 (2001).

On appeal, Square now contradicts the claim construction it presented to the Board, insisting that the claimed system "necessarily requires the user to select which account role to use." Response, p. 47. Square's about-face is unavailing, and it cannot alter the record when convenient, since the prosecution history disclaimer of user selection was timely presented to the Board.

Square's new claim construction on appeal also bears a striking resemblance to that of the Board's Final Written Decision: "a user is permitted expressly to select which account mode is desired at the appropriate point in time." Appx14. This construction disregards the prosecution history disclaimer of user

selection and should therefore be reversed by this Court.

C.    **The Board had no discretion to disregard the prosecution history disclaimer of user selection.**

The Board cannot disregard a prosecution history disclaimer even when applying the broadest reasonable interpretation standard. This Court recently confirmed that the "prosecution history . . . is to be consulted even in determining a claim's broadest reasonable interpretation." *Straight Path IP Group, Inc. v. Sipnet EU S.R.O.*, 806 F.3d 1356, 1362 (Fed. Cir. 2015) (citing *Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1298 (Fed. Cir. 2015)).

Square misstates settled law when it claims "no precedent" requires the Board to consider a prosecution history disclaimer. Response, p. 47. Its three cited authorities suggest nothing of the sort. Its reliance on *Proxyconn* and *Cuozzo* are especially misplaced, since this Court never addressed prosecution history disclaimer in those cases. *See Proxyconn*, 789 F.3d at 1292; *see also In Re Cuozzo Speed Techs., Llc.*, 778 F.3d 1271 (2015). *Tempo Lighting* only instructs that the PTO, *for ex parte prosecution*,

— 5 —

need not accept a prosecution history disclaimer. In that case, the examiner had the patent owner amend the claims instead. *See Tempo Lighting, Inc. v. Tivoli, LLC*, 742 F.3d 973, 978 (Fed. Cir. 2014).

And contrary to Square's argument on appeal, the Examiner accepted the applicant's disclaimer of user selection of account roles. *See* Appellee's Answering Brief ("Response"), p. 51. The Notice of Allowance reflected that the applicant's disclaimer allowed for removal of prior art previously found to disclose the bi-directional account element (along with another element involving "adding an item offered for sale"). Appx1597-1598.

The applicant clearly and unmistakably disavowed user selection of account roles, thereby generating a prosecution history disclaimer that the Board could not ignore. *See, supra,* Section I.A.; *see also* Think Opening Brief, pp. 13-15, 22-28. Accordingly, this Court should reverse the Board's decision for construing claim language without considering the prosecution

history disclaimer.

## II. Even without the prosecution history disclaimer, the Board misconstrued the bi-directional account element.

### A. Exclusion of user selection is dictated by the claims' plain meaning and is positively confirmed by the prosecution history.

The claimed system must carry out the method of "assigning a role of a merchant account to a first account and a role of a purchaser account to a second account **within a payment system.**" Appx67 at claim 1 (emphasis added). A human user cannot inhabit an electronic payment system and control its operation, nor could she adapt those accounts to "selectively function as either a merchant account or a purchaser account during any particular transaction." *Id.* And a human cannot *physically* "obtain[] a user ID token of the purchaser from the merchant terminal" and "communicat[e] identity confirmation information associated with the user ID token to the merchant terminal." *Id.* The *subject* assigning these account roles and obtaining and transferring user ID tokens can only be the electronic payment system, and that

system's operations are defined by computer code, not human choice.

And the prosecution history positively confirms this exclusion of user selection of account roles. *See Straight Path IP Group*, 806 F.3d at 1362. The applicant distinguished prior art, cited by the Examiner, which only disclosed that

> a *person* can assume these different [account] roles, however, this does not teach that an *account within a payment system* is adapted to selectively function as either a merchant account or a purchaser account during any particular transaction, as in Applicant's claim 1.

Appx1667.

Now on appeal, Square still acknowledges that the above passage means "that the account, rather than a human person alone, has to have the ability to function as both merchant and purchaser." Response, p. 5. But, paradoxically, it then suggests that user selection of account roles is conceptually identical to "allow[ing] users to buy and sell items from a single account" and "the payment system must somehow effect that choice by

presenting relevant options and information." Response, p. 47. To Square, whether the "user" or "system" assigns account roles is "a distinction without a difference." *Id.*

Yet the word "user" appears nowhere in the bi-directional account element. Account roles must be assigned "**within a payment system**", not outside the payment system by a user. This distinction is the core novelty of a bi-directional account. Naturally, the user must choose what to buy or sell. The claimed payment system makes this process easier than ever by responsively assigning account roles and appropriately selecting those roles for every transaction. *See* Appx67 at claim 1.

B.   **The Board construed claim language based on the specification that contradicted the claims' plain meaning.**

In *Straight Path*, this Court reversed the Board's claim construction based on a reading of the specification that "does not provide a basis for reasonably adopting a construction that contradicts the plain meaning of the claim language." *Straight*

*Path IP Group*, 806 F.3d at 1361.

There, the claimed invention involved a protocol for communicating between two processing units over a network. *Id.* at 1358. The Board construed the claim language "a query as to whether the second process **is connected** to a computer network" as a query that requests "whatever the connection server has listed about [that] second unit's on-line status . . . **even if it lists the second unit as online when, at that time, it is in fact not online**." *Id.* at 1360 (emphasis added).

Here, the Board deviated from the claims' plain meaning when it misread the specification to allow user selection of account roles. Just as the Board in *Straight Path* construed "**is** connected" as "**was** connected", *id.*, the Board in this case construed "assigning a role . . . **within a payment system**" as "a user is permitted expressly" to assign a role **within a payment system**, Appx14.

Also like the Board in *Straight Path*, the Board in this case

— 10 —

based its claim construction entirely on a misreading of the

specification:

> An entity (e.g., a person, business, or other legally recognized entity) preferably creates an account within the payment system. The accounts of the payment system are preferably designed so that an account may selectively function as either a merchant or a purchaser during any particular transaction. In other words, within the scope of all transactions, accounts of the payment system can function as bi-directional transaction accounts.

Appx14 (citing Appx64 at 3:15-22). The Board concluded that this

passage "discloses expressly that [the user] being able to select

which account mode is desired is the same as 'bi-directional

transaction accounts.'" Appx14. And yet, that passage only

mentions a user "creat[ing] an account within the payment

system"—nothing at all about a user selecting account modes. *Id.*

In fact, that passage only reinforces the claims' plain language,

that such accounts are "*designed* so that an account may

selectively function as either a merchant or a purchaser during

any particular transaction." *Id. Designed* in this context must

mean the electronic payment system is *programmed* to select the

appropriate account role for each transaction, since it is impossible to design the future actions of a human user.

Accordingly, the Board based its claim construction on a misreading of the specification. Its unreasonable interpretation of the bi-directional account element should be reversed.

## CONCLUSION

This Court should reverse the Board's Final Written Decision canceling claims 1-7, 9-11, 13-17, and 20-22 of the '808 patent on the grounds of obviousness.

Dated: January 10, 2017

Respectfully submitted,

/s/ Isaac Rabicoff
RABICOFF LAW LLC
73 W Monroe St
Chicago, IL 60603
(773) 669-4590

— 12 —

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that, on January 10, 2017, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Federal Circuit by using the CM/ECF system. I further certify that all parties are registered CM/ECF users and have been served through the appellate CM/ECF system.

I further certify that, upon acceptance and request from the Court, the required paper copies of the foregoing will be deposited with Federal Express for delivery to the Clerk of Court, United States Court of Appeals for the Federal Circuit, 717 Madison Place, N.W., Washington, D.C. 20439.

Dated: <u>January 10, 2017</u>

<u>/s/ Isaac Rabicoff</u>
Isaac Rabicoff

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 2,388 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Fed. Cir. R. 32(b)(1)-(3).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook.

Dated: <u>January 10, 2017</u>

<u>/s/ Isaac Rabicoff</u>
Isaac Rabicoff